OPINION OF THE COURT
John M. Hunt, J.
This adoption proceeding presents the novel issue of whether two adults who are unrelated by blood or marriage may jointly adopt a child who is not the child of either petitioner.
*647 By petition filed on April 25, 2000 petitioners, Ann M. Wilson and John W. Foster, seek to adopt a child, Carl David Hall, who was born out of wedlock to Michelle A. Hall and an unknown biological father on October 3, 1996. On November 15, 1996 the child’s mother, Ms. Hall, executed an extrajudicial surrender of her parental rights in accordance with Social Services Law § 384[2] which vested guardianship and custody of the child in Spence-Chapin Services to Families and Children (Spence-Chapin), an authorized agency as defined by Social Services Law § 371 (10).[3]
In their joint petition to adopt Carl the petitioners allege, inter alia, that they are residents of Queens County, that they are both divorced, and that Carl was boarded out into their home by Spence-Chapin on October 8, 1996 and he has resided with them since that date. Mr. Foster, who is 52 years old, is a bus operator and Ms. Wilson, who is 55 years old, is a homemaker who is receiving Social Security disability benefits. In a “Marital History Affidavit,” the petitioners state that they are each divorced,[4] and that they “have been life partners for the past 24 years.” Various documents have been submitted in connection with the petition for adoption including the agreement by petitioners to adopt Carl and to treat him in all respects as their lawful child (Domestic Relations Law § 112 [2] [b]), the consent of Spence-Chapin to the adoption of the child by petitioners (Domestic Relations Law § 113; e.g., Matter of Alexandria Mary, 227 AD2d 44), financial disclosure affidavits from petitioners and the agency (22 NYCRR 205.53 [b] [8]) indicating that petitioners paid no compensation to SpenceChapin and that the agency accepted no payments from petitioners, and affidavits from the agency and the child’s biological mother setting forth facts which establish that the child’s unknown putative father’s consent to the adoption is unnecessary (Domestic Relations Law § 111).
Three required reports have also been submitted in support of the petition. The State Division of Criminal Justice Services *648 through the State Office of Children and Family Services reports that neither petitioner has a reportable criminal history (Social Services Law § 378-a [1], [2]). The State Central Register of Child Abuse and Maltreatment has also submitted reports stating that there are no indicated cases of child abuse or neglect on file as to either petitioner (Domestic Relations Law § 112 [7]), and Spence-Chapin has submitted the report of its investigation of petitioners which is commonly referred to as a “homestudy” (Domestic Relations Law § 112 [7]; 22 NYCRR 205.54).[5]
Briefly summarized, the report submitted by Spence-Chapin confirms the information in the petition as to petitioners’ ages, marital status, residence, employment and income. The report states that Carl was born on October 3, 1996, that he was placed in petitioners’ home on October 8, 1996, that this placement was designated as a pre-adoptive placement on October 31, 1997, and that “Ann Wilson and John Foster, who have been together since 1973, plan to jointly adopt [Carl].” The family lives in a large detached house and the child is very attached to the petitioners and members of their extended family. Carl has developed age appropriately and it is apparent that he is receiving excellent care from petitioners. Ms. Wilson and Mr. Foster met at a dance in 1973 when they were introduced by her cousin. Both petitioners were separated from their spouses at that time and they developed an intimate relationship and began living together. Petitioners have now been in this relationship for 24 years. Mr. Foster has acted as a father to Carl and the child sees him as his father.
Upon review of the petition and reports this court concludes that the petitioners are suitable adoptive parents for Carl and that his adoption by the petitioners would be in his best interests (Domestic Relations Law § 114; Matter of Donald U., 105 AD2d 875, appeal dismissed 64 NY2d 603; Matter of Baby Girl W., 151 AD2d 968, lv denied 74 NY2d 613).
The question remains, however, whether the petitioners, two unmarried adults, may jointly adopt a child who is the child of neither of them.
Domestic Relations Law § 110 provides, in pertinent part,' that: “An adult unmarried person or an adult husband and his adult wife together may adopt another person. An adult mar *649 ried person who is living separate and apart from his or her spouse pursuant to a decree or judgment of separation or pursuant to a written agreement of separation subscribed by the parties thereto * * * or an adult married person who has been living separate and apart from his or her spouse for at least three years prior to commencing an adoption proceeding may adopt another person * * * An adult or minor husband and his adult or minor wife together may adopt a child of either of them born in or out of wedlock and an adult or minor husband or an adult or minor wife may adopt such a child of the other spouse. No person shall hereafter be adopted except in pursuance of this article.”
“Adoption is the legal proceeding whereby a person takes another person into the relation of child and thereby acquires the rights and incurs the responsibilities of parent in respect of such other person” (Domestic Relations Law § 110; Matter of Robert Paul P., 63 NY2d 233, 236). Because adoption was unknown at common law, it has often been stated that the adoption statutes must be strictly construed (Matter of Robert Paul P., 63 NY2d, at 237-238, supra; Matter of Jacob, 86 NY2d 651, 657; Matter of Daniel C., 99 AD2d 35, 39, affd 63 NY2d 927). Domestic Relations Law § 110 clearly permits the joint adoption of a child by married persons (Matter of Baby Boy C., 84 NY2d 91, 97), by unmarried adults (Matter of Raquel Marie X., 76 NY2d 387, 406; Matter of Byron K., 206 AD2d 642, 643; Matter of Anonymous, 209 AD2d 960), by his or her stepparent (e.g., Matter of Devorah Leah B., 152 AD2d 566; Matter of Baby Girl W.D., 251 AD2d 501), and since 1991 by a married person living separate and apart from his or her spouse for at least three years (L 1991, ch 254; Matter of Baby Boy C., 84 NY2d, at 102; Mem of Off of Ct Admin, 1991 McKinney’s Session Laws of NY, at 2401).
In 1995 the Court of Appeals decided the issue of whether Domestic Relations Law § 110 permits two unrelated adults to jointly adopt the child of one of the parties in its decision of Matter of Jacob and Matter of Dana (86 NY2d 651). In the adoption of Jacob an unrelated man and woman sought to jointly adopt the child of the former marriage of the woman. The child’s biological father consented to the adoption by the petitioners but the Family Court denied the petition on the ground that “Domestic Relations Law § 110 does not authorize adoptions by an unmarried couple” (at 656) and the denial of the petition was affirmed by the Appellate Division. In the adoption of Dana two unrelated women sought to adopt a child *650 born to one of the women by artificial insemination from an anonymous donor. The Family Court denied the adoption petition for lack of standing and also found that the proposed adoption would result in the automatic termination of the biological mother’s rights pursuant to Domestic Relations Law § 117.[6] The Appellate Division, while finding that the unrelated woman had standing to adopt, affirmed the denial of the petition on the ground that Domestic Relations Law § 117 prohibits the adoption.
In its opinion the Court of Appeals holds that the petitioners, unrelated adults, do have standing to adopt the children and that Domestic Relations Law § 117 did not present a bar to the proposed adoptions (supra, at 657). The Court states that “in strictly construing the adoption statute, our primary loyalty must be to the statute’s legislative purpose — the child’s best interest * * * [t]his policy would certainly be advanced in situations like those presented here by allowing the two adults who actually function as a child’s parents to become the child’s legal parents” (supra, at 658).
What distinguishes the adoptions at issue in Matter of Jacob and Matter of Dana (supra), and the proposed adoption before this court, is that the subject child was the biological child of one of the petitioners. In its opinion the Court of Appeals found that the unrelated adult partner of the child’s parent had standing to petition to jointly adopt the child with the biological parent as “ ‘an adult unmarried person’ ” under Domestic Relations Law § 110 (supra, at 660), and that the use of the word “together” in Domestic Relations Law § 110 does not enforce a public policy preference that persons seeking to jointly adopt a child be married to each other. Rather, in the Court’s view, “[t]he statute uses the word ‘together’ only to describe married persons and thus does not preclude an unmarried person in a relationship with another unmarried person from adopting” (supra, at 660).
In Matter of Jacob and Matter of Dana the Court of Appeals did not reach the issue before this court, whether two unre *651 lated adults may jointly adopt a child who is not the child of either petitioner (see, supra, at 660, n 3). In the sole reported New York decision on this issue, Matter of Joseph (179 Misc 2d 485 [Sur Ct, Oneida County 1998]), petitioners were two unmarried adults who had lived together for 29 years although they had not married. Each petitioner was divorced and each had children from a prior marriage, and the prospective adoptive father had previously adopted another child as a single adult but both petitioners have raised that child. The Surrogate determined that the proposed adoption by petitioners was in the best interests of the subject child and the child’s Law Guardian was in favor of the adoption. The Surrogate noted that while the issue of whether the unmarried petitioners could adopt the child jointly was not decided by the Court of Appeals in its decision in Matter of Jacob, the court found no valid reason why the two unmarried petitioners should not be permitted to jointly adopt the child. A review of the limited case law from other jurisdictions indicates that there is no unanimity of opinion among the jurisdictions. For example, in one reported decision, In re Jason C. (129 NH 762, 533 A2d 32 [1987]), the court holds that two unmarried adults may not jointly petition to adopt a foster child. The court states, inter alia, that “[m]arried applicants who apply [to adopt] jointly demonstrate a sense of common purpose [and] [t]he unmarried applicant who applies alone presents a household with no apparent risk of splitting up * * * We may infer, then, that it was the legislature’s intent to confine adoption to applicants who will probably provide a unified and stable household for the child. This objective is not likely to be served by authorizing two unmarried applicants to adopt jointly” (129 NH, at 764, 533 A2d, at 33, supra).[7] In contrast, the District of Columbia Court of Appeals reached the opposite conclusion in In re M.M.D. (662 A2d 837 [DC App 1995]). In that case two unmarried adults “living together in a committed personal relationship” (at 840) sought to adopt a child jointly. The court found that the adoption statute for the District of Columbia neither authorized nor prohibited such an adoption, nor was *652 there any legislative, history suggesting that Congress decided to preclude a joint adoption by an unmarried adult couple (supra, at 842). Upon review of the facts the court states that “this case and others demonstrate that adoption by an unmarried couple can be in a child’s best interests — especially when the alternative would be a child’s living in a family with two unmarried parents, only one of whom would be allowed to establish a formal parental relationship” with the child {supra, at 842-843).
The adoption statute does not expressly prohibit this proposed adoption. Both petitioners are willing and able to assume the duties of parenthood with respect to Carl and to provide him with a stable and permanent home (Matter of Michael B., 80 NY2d 299, 310), and this court finds the proposed adoption to be in his best interests, which is the determinative factor in deciding whether to grant an adoption petition. Therefore, in accordance with the reasoning of the Court of Appeals in Matter of Jacob (supra), the petitioners may jointly adopt him. To deny the adoption would, as noted by the New York and District of Columbia Courts of Appeals, create a family with two unmarried parents only one of whom would be allowed to formalize his or her parental relationship with Carl (see, Matter of Jacob, 86 NY2d, at 656, supra; In re M.M.D., 662 A2d, at 842, supra). Such a result would be contrary to the purpose underlying the adoption statute which is to provide the child with emotional stability and permanency (Matter of Jacob, 86 NY2d, at 659, supra; In re M.M.D., 662 A2d, at 857-858). Alternatively, were petitioners not permitted to adopt the child jointly, it would require the nonadopting petitioner to file a subsequent “stepparent”-type adoption petition in New York or another jurisdiction which would amount to little more than a legal fiction with the result being the same — both petitioners would be Carl’s adoptive parent (In re M.M.D., 662 A2d, at 843, supra).
Accordingly, this petition for adoption may proceed in its present posture and the Adoption Clerk is directed to place the petition on the court’s adoption calendar.

. A surrender instrument executed pursuant to the Social Services Law terminates the parental rights of a parent whose child is not in foster care at the time of the surrender. An extrajudicial surrender executed pursuant to Social Services Law § 384 (3) (b) need not be approved by a court in order to be effective (Social Services Law § 384 [4]).

. An “authorized agency” as defined by Social Services Law § 371 (10) may place children for adoption or board children for foster care (Social Services Law § 374 [1]; Matter of Tyriek W., 85 NY2d 774, 777; cf., Matter of Unnamed Baby Boy, 110 AD2d 1019, 1020 [doctor not an authorized agency with authority to place child out for adoption]).

. Ms. Wilson was divorced in 1977 and Mr. Foster was divorced in 1998.

. The “homestudy is the report of an authorized agency or other qualified person appointed by the court to examine the allegations in an adoption petition and to report to the court as to the propriety of approving the adoption (Domestic Relations Law § 112 [7]).

. Domestic Relations Law § 117 (a) provides: “[ajfter the making of an, order of adoption the natural parents of the adoptive child shall be relieved of all parental duties toward and of all responsibilities for and shall have no rights over such adoptive child or to his property by descent or succession, except as hereinafter stated.” As noted by Professor Scheinkman, it is not clear that this statute is to be afforded its literal meaning after the Court of Appeals decision in Matter of Jacob (supra; Scheinkman, 1996 Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law § 117, 1999 Pocket Part, at 259).

. While this court did not have the benefit of reviewing the briefs submitted to the New Hampshire Supreme Court, it does appear that the Supreme Court’s rationale for holding that an unmarried couple could not adopt, that is, that unmarried applicants may not continue their relationship, is subject to question given the 24-year relationship between the petitioners in this case, the 29-year relationship between the petitioners in Matter of Joseph (supra), the 19-year relationship between petitioners in Matter of Dana (supra), and the high rate of divorce for married persons.