[742 NYS2d 22]

In the Matter of the Adoption of EMILIO R., an Infant. EMMA R. et al., Appellants; COMMISSIONER OF THE ADMINISTRATION FOR CHILDREN'S SERVICES OF THE CITY OF NEW YORK, Appellant. PIERRE M. JANVIER, as Law Guardian.

First Department, May 9, 2002

#### APPEARANCES OF COUNSEL

*Glenda M. Rothberg* for appellants.

*Elizabeth I. Freedman* of counsel (*Francis F. Caputo* on the brief; *Michael D. Hess, Corporation Counsel* of New York City, attorney), for municipal appellant.

*Pierre M. Janvier, Law Guardian,* for infant.

#### OPINION OF THE COURT

WALLACH, J.

What is unusual about this appeal is that all the parties to

this proceeding—petitioners, the agency and the Law Guardian—urge reversal of the Family Court order denying the joint petition for adoption. We do not hesitate to join this consensus.

The subject child was placed in the foster care of his maternal grandmother in 1987, when he was one month old. (The biological mother was incapable of caring for the child, and the termination of her parental rights was formalized by court order in 1999.) When the grandmother died in 1989, the child, then 16 months old, was placed in the care of the grandmother's sister (i.e., his maternal great aunt) and her common-law husband, petitioners herein, who have lived together steadily, unmarried by choice, for the past 20 years. Neither one has ever been married before. Emma is a senior administrative aide with the New York City Police Department, and Lupercio is a devoted homemaker. Petitioners have a son born of this out-of-wedlock union in 1982. The two boys, who are actually first cousins one generation removed, have grown up together in this family and have always considered themselves brothers. Furthermore, even though Lupercio is not related to the child by blood or by law, the home study conducted by the Administration for Children's Services reported that Lupercio has always treated this child as his own son; and the child, in turn, respects Lupercio as the "father he never had."

The caseworker recommended approval of the adoption without reservation, emphasizing petitioners' "safe and nurturing home" for the child, their strong, loving and caring relationship, and the closeness of the family. Also noted was the fact that blood relatives had always assumed responsibility for this child since birth.

Family Court denied the petition for lack of standing, holding that petitioners' common-law relationship was a disqualifying factor, in the absence of specific statutory inclusion. In the exercise of its judicial discretion, the court went further and found that approval of joint adoption by these petitioners "would not promote the child's sense of permanency or emotional security and, therefore, would not be in the child's best interest."

We reverse on two grounds. First, the Court of Appeals has indicated, in *Matter of Jacob* (86 NY2d 651), that New York's adoption statute is, indeed, broad enough to encompass adoption by an unmarried couple. Second, we find that Family Court erred in ruling that the adoption sought herein was not in the best interests of the child.

Unknown at common law, adoption has been a creature of statute in New York for more than a century. Normally, a statute in derogation of the common law requires strict construction. Noting the "patchwork" history of this legislation over the years, the *Jacob* Court emphasized that this sensitive area of the law, which is designed to encourage and expand the prospects for adoption in this state, requires full appreciation of the legislative purpose as well as the literal language of the statute. In meeting that continuing challenge of interpretation, the Court of Appeals has determined that application of the statute must be harmonized with the overarching principle of securing the best possible home for the child.

Domestic Relations Law § 110 permits the adoption of a child by an adult unmarried person. In *Matter of Jacob,* the Court of Appeals approved the standing of a biological mother's unmarried partner to become an adoptive parent of her child, noting that the legislative purpose would be advanced in a situation where "the two adults who actually function as a child's parents [were] to become the child's legal parents" (86 NY2d at 658), thus extending the emotional security of permanency to an already familial setting. The significant differences between *Matter of Jacob* and the case at bar are that we are here presented with a necessarily *joint* adoption petition, and the adoptive mother is a blood relative, albeit not the biological mother.

### Standing for Joint Adoption

Our statute contains no prohibition against a *joint* adoption by an unmarried couple. *Matter of Jacob* was a classic case of "second-parent adoption," i.e., the spouse of the biological parent seeking the legal status of parenthood. In what the Court of Appeals viewed as an understandably misguided effort to cover all bases, the parties unnecessarily brought the petition jointly, prompting the Court to observe that such procedural posture should not affect the standing of the nonbiological petitioner to adopt (86 NY2d at 660 n 2).

Section 110 opens with the declaration that "An adult unmarried person or an adult husband and his adult wife *together* may adopt another person" (emphasis supplied). Clearly, under *Jacob,* where either petitioner is a biological parent of the child, the other has standing to adopt, regardless of the lack of a legal marital relationship between them. In reaching that conclusion, the Court of Appeals interpreted the word "together" as a restriction applying only to legally married couples, the purpose being to assure that one party to a

marriage could not unilaterally bind the spouse to such parental responsibility without the latter's consent. But the use of the word "together" in the statute "does not preclude an unmarried person in a relationship with another unmarried person from adopting" (86 NY2d at 660).

### The Biological Factor and the "Best Interest" Test

We are satisfied that the statute does not prohibit adoption by a couple, neither of whom is a biological parent. In the absence of a biological parent, two other factors come into play. The first is the existence of *any* blood relationship between one of the adoptive parents and the child. This was actually a motivating factor in petitioners' acceptance of foster care in the first place, 13 years ago. From the moment of his birth, some member of this child's family has always assumed responsibility for his care.

The second factor is the nature of the prospective adoptive environment. All the parties are in agreement that this child has been raised in a nurturing family setting over the past 13 years. If the goal is indeed to encourage a familial permanency through adoption, it is difficult to imagine a more suitable set of eligible parents than petitioners. In the face of uncontradicted evidence of petitioners' good faith and exemplary parental performance, there is no basis whatsoever, in law or in fact, for the Family Court's conclusion that granting this petition would not be in the child's best interest.

Accordingly, the order of the Family Court, Bronx County (Tandra Dawson, J.), entered on or about November 13, 2000, which denied the petition and dismissed this proceeding for adoption, should be reversed, on the law and the facts, without costs, and the petition granted.

Tom, J.P., Andrias, Buckley and Lerner, JJ., concur.

Order, Family Court, Bronx County, entered on or about November 13, 2000, reversed, on the law and the facts, without costs, and the petition for adoption granted.