[774 NYS2d 227]

In the Matter of the Adoption of CAROLYN B., an Infant. NANCY E.H. et al., Appellants.

Fourth Department, March 19, 2004

**APPEARANCES OF COUNSEL**

*Goldman, Newman, Shinder, Franklin & Young, LLP,* Rochester (*Gregory A. Franklin* of counsel), for appellants.

**OPINION OF THE COURT**

GREEN, J.

In *Matter of Jacob* (86 NY2d 651 [1995]), the Court of Appeals held that the unmarried partner of a child's biological parent has standing to adopt the child under Domestic Relations Law § 110. On this appeal, we are called upon to decide a question expressly left unanswered in *Jacob*: whether two unmarried adults may jointly adopt a child who is the biological child of neither of them (*see id.* at 660 n 3). We conclude that they may.

Petitioners, professional women in their forties, commenced this proceeding by filing a joint petition seeking to adopt Carolyn B., a child born in Cambodia on May 20, 1998. Carolyn had been placed with petitioners by an authorized adoption agency after her first adoptive parents surrendered her to the agency on December 21, 2001. The petition and supporting documents establish that petitioners have resided together since 1981 in a committed relationship, and publicly demonstrated their commitment by participating in a "Commitment Ceremony" recognized by the Episcopal Church and by registering as domestic partners in the City of Rochester. In 1996 petitioners became the adoptive parents of another child in separate proceedings when that child was an infant. Thus, at the time the petition was filed, petitioners were living together in a long-standing cohesive family unit.

The joint petition seeking adoption of Carolyn was unopposed, and the agency that placed Carolyn with petitioners recommended "with pleasure and without reservation" that the adoption be finalized. Nevertheless, Family Court dismissed the petition based on "the requirements set forth in Domestic Relations Law § 110 not having been complied with." Presumably, the court took the position, now advocated by the dissent, that unmarried persons are not authorized by the statute to file a joint petition for adoption of a child. We disagree.

Domestic Relations Law § 110, entitled "Who may adopt," provides in relevant part that "[a]n adult unmarried person or an adult husband and his adult wife together may adopt another person." There is no question that the statute expressly confers standing upon either petitioner, as an adult unmarried person, to adopt Carolyn (*see Jacob*, 86 NY2d at 660). Further, the sexual orientation of petitioners is of no significance, because the goal of the statute is to "encourag[e] the adoption of as many children as possible regardless of the sexual orienta-

tion or marital status of the individuals seeking to adopt them" (*id.* at 662). The statute, however, neither expressly prohibits petitioners, as an unmarried couple, from adopting Carolyn jointly (*see Matter of Emilio R.*, 293 AD2d 27, 29 [2002]; *Matter of Carl*, 184 Misc 2d 646, 652 [2000]), nor expressly permits them to do so.

In *Jacob*, the Court of Appeals was confronted by a similar question of statutory interpretation in relation to second parent adoptions. Before undertaking the "often close and difficult task of statutory interpretation" (*id.* at 659), the Court placed that task within the framework of legislative purpose and policy concerning adoption:

> "First and foremost, since adoption in this State is 'solely the creature of . . . statute' (*Matter of Eaton*, 305 NY 162, 165), the adoption statute must be strictly construed. What is to be construed strictly and applied rigorously in this sensitive area of the law, however, is legislative purpose as well as legislative language. Thus, the adoption statute must be applied in harmony with the humanitarian principle that adoption is a means of securing the best possible home for a child (*see, Matter of Malpica-Orsini*, 36 NY2d 568, 571-572)" (*id.* at 657-658).

The language of Domestic Relations Law § 110, the Court concluded, "poses no statutory impediment" to second parent adoptions (*Jacob*, 86 NY2d at 660), and the legislative purpose of promoting the best interests of the child "would certainly be advanced in situations like those presented here by allowing the two adults who actually function as a child's parents to become the child's legal parents" (*id.* at 658).

In addition to the absence of an explicit prohibition and the overriding purpose of the adoption statute, the *Jacob* court found further support for the conclusion that second parent adoptions are permitted under section 110 in the historical development of the statute. That development, the Court explained, is characterized by "a successive expansion of the categories of persons entitled to adopt" in response to evolving conceptions of family (*id.* at 661). In sum, the Court explained, a reading of Domestic Relations Law § 110 giving unmarried second parents standing to adopt the children of their partners is consistent with both the letter and the spirit of the statute as it has developed: "encouraging the adoption of as many children as possible regardless of the sexual orientation or marital

status of the individuals seeking to adopt them" (*Jacob*, 86 NY2d at 662).

The same considerations of legislative language, policy and history lead us to the conclusion that petitioners have standing to adopt Carolyn jointly under Domestic Relations Law § 110. As in *Jacob*, the language of that section "poses no statutory impediment" to joint adoption by two unmarried persons of a child who is not the biological child of either of them (*id.* at 660; *see Emilio R.*, 293 AD2d at 29; *Carl*, 184 Misc 2d at 652). Further, requiring petitioners to file separate, successive petitions is not in the best interests of Carolyn. That procedure deprives Carolyn of two legal parents during the interval between the finalization of two separate adoptions (*see Carl*, 184 Misc 2d at 652). Further, requiring such a two-step procedure where one joint petition would accomplish the same end would constitute a waste of judicial resources. Finally, and more significantly, the separate, two-step procedure required by the court and endorsed by the dissent distorts the nature of the proposed adoption. Petitioners have been functioning jointly as Carolyn's parents from the time of Carolyn's placement with them, and they seek to make that existing relationship legal and permanent. Their joint petition reflects the reality of their situation, and it should not have been dismissed on the ground that they lack standing to adopt jointly.

Accordingly, the order should be reversed and the petition reinstated. Because the court dismissed the petition without considering whether the adoption would be in the best interests of Carolyn, the matter should be remitted to Family Court for further proceedings on the petition.

PIGOTT, JR., P.J. (dissenting). We respectfully dissent. The issue in this case is not whether two unmarried individuals of the same sex can become adoptive coparents of a child. The Court of Appeals answered that question in the affirmative (*Matter of Jacob*, 86 NY2d 651 [1995]). Rather, the issue is a procedural one, viz., can two individuals not married to one another file a joint petition for adoption of a child who is not biologically related to either party? Simply stated, section 110 of the Domestic Relations Law limits joint petitions to married couples. While it is true, as argued by petitioners, that courts have permitted such joint adoptions on the practical ground that what can be done separately ought to be permitted jointly (*see e.g. Matter of Carl*, 184 Misc 2d 646 [2000]), it is also true that there is a fundamental difference between a married couple and an unmarried couple that ought not be ignored.

*Matter of Alison D. v Virginia M.* (77 NY2d 651 [1991]) is instructive and in our view employs the appropriate analysis for cases such as this. In *Alison D.*, the Court of Appeals affirmed a judgment dismissing a proceeding seeking visitation rights on the ground that the petitioner was without standing to commence such a proceeding. The petitioner was the former partner of the respondent who, in turn, was the child's biological mother and had custody of the child. The petitioner sought visitation rights with the child pursuant to Domestic Relations Law § 70. The Court deferred to the Legislature and declined to read the term "parent" in Domestic Relations Law § 70 to "include categories of nonparents who have developed a relationship with a child or who have had prior relationships with a child's parents and who wish to continue visitation with the child" (*Alison D.*, 77 NY2d at 657). According to the Court, "[w]hile one may dispute in an individual case whether it would be beneficial to a child to have continued contact with a nonparent, the Legislature did not in section 70 give such nonparent the opportunity to compel a fit parent to allow them to do so" (*id.*). In line with this reasoning, we submit that, as creatures of statute, adoption issues such as those presented on this appeal are best left to the Legislature.

In sum, it is for the Legislature to determine whether joint petitions should be limited to married couples. Because the petition is not permitted at law, we cannot reach the best interests of the child. If the only motivation for filing a joint petition for adoption of the child is to become her adoptive parents, petitioners may do so by filing individual petitions. Accordingly, we would affirm.

PINE and GORSKI, JJ., concur with GREEN, J.; PIGOTT, JR., P.J., and LAWTON, J., dissent and vote to affirm in a separate opinion by PIGOTT, JR., P.J.

It is hereby ordered that the order so appealed from be and the same hereby is reversed, on the law, without costs, the petition is reinstated, and the matter is remitted to Family Court, Monroe County, for further proceedings on the petition.