People v West (2004 NY Slip Op 24224)

People v West

2004 NY Slip Op 24224 [4 Misc 3d 605]

June 10, 2004

Justice Court Of Town Of New Paltz, Ulster County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, September 15, 2004

[*1]
The People of the State of New York, Plaintiff,
v
Jason West, Defendant.
Justice Court of Town of New Paltz, Ulster County, June 10, 2004

APPEARANCES OF COUNSEL

Heller, Ehrman, White & McAuliffe, New York City (E. Joshua Rosenkranse of counsel), for defendant. Donald A. Williams, District Attorney, Kingston, for plaintiff.

{**4 Misc 3d at 605} OPINION OF THE COURT

Jonathan D. Katz, J. 
The defendant is the Mayor of the Village of New Paltz charged {**4 Misc 3d at 606}with solemnizing marriages for individuals who had not obtained marriage licenses.
By notice of motion dated March 24, 2004, the defendant has moved to dismiss the information charging him with multiple counts of the crime of solemnizing marriages without licenses in violation of sections 13 and 17 of the Domestic Relations Law. The essence of his argument is that the Domestic Relations Law licensing requirement is unconstitutional as applied because it has the effect of preventing same-sex marriages. If unconstitutional, then the information charging under that section is defective within the meaning of Criminal Procedure Law § 170.35 (1) (c), requiring its dismissal. (CPL 170.30 [1] [a].) In the alternative, the Mayor asks for dismissal in the interests of justice, arguing that even if guilty there would be no just purpose served by his criminal conviction.
The People have expressly taken no position regarding same-sex marriage. The prosecution's principle argument is that this case presents only the simple question of whether the defendant violated Domestic Relations Law §§ 13 and 17 by solemnizing marriages for people who had not been issued marriage licenses, a fact that is not in dispute. Nor is there a dispute over the fact that had they applied for licenses they would not have received them for the singular reason that the applicants were same-sex.
Town courts have jurisdiction to dismiss criminal charges on the grounds that the law defining the violation charged is unconstitutional. (People v Waterloo Stock Car Corp., 89 Misc 2d 922 [1977]; People v Merksamer, 139 Misc 2d 987 [1988]; CPL 170.30 [1] [a]; 170.35 [1] [c].) The defendant's dismissal motion is authorized by CPL 170.30 (1) (a) and CPL 170.35 (1) (c) as a way of challenging the constitutionality of Domestic Relations Law § 13. The determination of the constitutionality of Domestic Relations Law § 17 is both "necessary and unavoidable." (People v Furlong, 129 Misc 2d 938 [1985], later proceeding 70 NY2d 756 [1987].)
Cultural and political attitudes about homosexual rights and same-sex marriage are evolving rapidly. No recent act of the Legislature suggests a policy favoring any form of discrimination against homosexuals or same-sex partnerships. The New York Attorney General has questioned [*2]the constitutionality of current New York law which denies marriage to same-sex couples. (See, 2004 Ops Atty Gen No. I 2004-1 [Mar. 3, 2004].) Ulster County Supreme Court Justice E. Michael Kavanagh has acknowledged the constitutional implications of denying marriage{**4 Misc 3d at 607} licenses to individuals based on sexual preference in his as yet unpublished decision in Hebel v West. In his June 7, 2004 decision, Justice Kavanagh issued a permanent injunction stopping the defendant from performing marriage ceremonies for people without marriage licenses, but did not reach the constitutional question. No New York court has addressed the constitutional implications of the denial of marriage licenses to same-sex couples in the context of criminal prosecution. However, recent court decisions and legislative enactments addressing related issues leave no doubt that New York policy favors ameliorating the discriminatory effect of current laws (or the lack thereof) on homosexuals. For example, the New York Court of Appeals has said that a "realistic and valid" view of family "includes two adult lifetime partners whose relationship is long term and characterized by an emotional and financial commitment and interdependence." (Braschi v Stahl Assoc. Co., 74 NY2d 201, 211 [1989] [same-sex partner is a family member for purposes of rent-controlled apartment].) The Court of Appeals interprets our adoption laws to allow for the possibility of the biological parent's same-sex partner to adopt her child. (Matter of Jacob, 86 NY2d 651, 668 [1995].) The Appellate Division, Fourth Department, has held that a lesbian couple has standing to adopt, notwithstanding the fact that Domestic Relations Law § 110 lists only unmarried adults, or a husband and wife, as people that may adopt. (Matter of Carolyn B., 6 AD3d 67 [2004].) The majority opinion held that the sexual orientation of the proposed adoptive parents to be irrelevant. A surviving spouse from a same-sex Vermont civil union is a "spouse" entitled to bring a wrongful death action under New York law. (Langan v St. Vincent's Hosp. of N.Y., 196 Misc 2d 440 [2003].) Same-sex partners are entitled to compensation resulting from the loss of their partners on September 11th. The New York State Legislature has adopted sweeping legislation directed to discrimination against homosexuals. (Civil Rights Law § 40-c; Insurance Law § 2701; Penal Law § 240.30 [3]; § 485.05 [1].) While, perhaps not exhaustive, the foregoing establishes that the policy of New York is to outlaw discrimination based upon sexual preference. Courts in New York addressing the issues of whether a same-sex partner is a spouse for the purpose of exercising his right of election against his partner's will, or a spouse for the purpose of bringing a wrongful death action, or whether a same-sex partner has the right to adopt children, acquire his partner's rights to a rent-controlled apartment, or receive {**4 Misc 3d at 608}benefits available to those who lost a spouse on September 11th, have acted to accord same-sex partners the same rights as if they were married. Even if the financial issues could be addressed in some comprehensive way short of allowing same-sex partners to marry, there would still be no emotional substitute for marriage. The equal protection issue raised by the defendant is real and must be addressed as a threshold issue to his prosecution.
This equal protection analysis is governed by the "rational basis standard." (Matter of Cooper, 187 AD2d 128, 133 [2d Dept 1993].) The question, therefore, is whether there is a legitimate state purpose in prohibiting same-sex marriage. The prosecution [*3]neither defends nor condones the discriminatory effect of the licensing requirement of the Domestic Relations Law. Its position is simply that the lawon its facewas violated, obligating it to fulfill its mandate to prosecute. The net effect of the lack of proof is that this record contains no evidence tending to show that there is a legitimate state interest in refusing marriage to same-sex partners. Likewise, the Attorney General did not exercise his right to intervene in this case to defend the state's interest in a statute that has the effect of preventing same-sex couples from marrying. If the state had a legitimate governmental purpose in preventing same-sex couples from marrying either the chief law enforcement officer of Ulster County or of the State of New York could have taken this opportunity to articulate it. The defense has rebutted the presumption of constitutionality enjoyed by Domestic Relations Law § 13 shifting the burden of proof on that issue to the People.
I am familiar with the arguments raised in the cases from other states addressing this issue and I understand the historical, cultural and religious opposition to same-sex marriage, but find that none of the reasons stated in opposition to same-sex marriage is paramount to the equal protection guarantees enshrined in the State and Federal Constitutions. In dismissing the information charging the Mayor with violating Domestic Relations Law §§ 13 and 17, I heed the admonishment of Justice Brandeis that "[w]e must be ever on our guard, lest we erect our prejudices into legal principles." (New State Ice Co. v Liebmann, 285 US 262, 311 [1932].) Based on the foregoing, the defendant's motion to dismiss is granted.