In the Matter of MARYANN DISCENZA, as Cortland County Commissioner of Social Services, on Behalf of LORRAINE NN., Respondent, v DANN OO., Appellant.

Third Department, July 20, 1989

## APPEARANCES OF COUNSEL

*Donald C. Armstrong* for appellant. *Mary E. Leonard* for respondent.

## OPINION OF THE COURT

LEVINE, J.

This proceeding was commenced in April 1987 by the Cortland County Commissioner of Social Services on behalf of Lorraine NN. (hereinafter referred to as petitioner) to establish the paternity of and obtain an order of support for petitioner's female child born March 23, 1969. Following a fact-finding hearing on the issue of paternity, Family Court rendered a decision and order determining that respondent is the father of the child. Respondent appeals from that order.

At the outset, we note that this appeal was taken before final adjudication of the issue of support, a form of relief also requested in the petition, and, hence, is in effect an attempt to

take a direct appeal from a nonfinal Family Court order, and is subject to dismissal as such *(see, Matter of Jane PP. v Paul QQ.,* 64 NY2d 15). This defect was not, however, raised by the parties, who have stipulated to the contents of the record and fully briefed the issues. In the interest of justice, we *sua sponte* grant permission to appeal in order to determine the matter on the merits *(see, Matter of Broome County Dept. of Social Servs. v Walter Z.,* 149 AD2d 756).

■ Respondent has raised three issues on appeal. The first of these is that the equitable doctrine of laches should bar this proceeding because of the inordinate and unjustified delay in initiating it by both petitioner and the County Social Services Department. As we recently held in *Matter of Cortland County Dept. of Social Servs. v Thomas ZZ.* (141 AD2d 119, 122), however, laches may not be invoked to bar a paternity proceeding brought within the statutory period of limitations of 21 years from the birth of the child (Family Ct Act § 517, as amended by L 1985, ch 809, § 21).

■ Next, and correlatively to his first contention, respondent argues that the 21-year Statute of Limitations in paternity proceedings (Family Ct Act § 517) violates his constitutional rights to equal protection and due process of law. We fail to discern any arguable claim whatsoever that the present Statute of Limitations is invalid on equal protection grounds. As it now exists, Family Court Act § 517 fully equates the rights to seek judicial enforcement of support obligations for children born in or out of wedlock *(cf., Pickett v Brown,* 462 US 1). Likewise, the statute has even eliminated the long-standing earlier distinctions in periods of limitations treatment (previously upheld in *Matter of Van Alstyne v David Q.,* 92 AD2d 971, 972-973) based upon whether the proceeding is brought by the mother, putative father or a public welfare official *(see,* Family Ct Act former § 517).

Regarding respondent's due process challenge to Family Court Act § 517, the test is whether the Legislature, in fixing a Statute of Limitations for paternity proceedings, reasonably balanced the competing interests of the State to insure that genuine claims for child support are satisfied and to reduce the number of children required to be supported by the public welfare system *(see, Pickett v Brown, supra,* at 10), against the interest of a putative father to be protected against the potential loss of evidence through, e.g., the lapse of memory or disappearance of witnesses, in defending against a stale, fraudulent claim of paternity *(Matter of Department of Social*

*Servs. v Thomas J. S.,* 100 AD2d 119, 130-131). In our view, a 21-year Statute of Limitations from the birth of the child does not constitute an irrational balancing of such interests. Nothing has been advanced here to demonstrate that the problems of defending against a stale claim of paternity are anything different from those encountered in defending against any remote cause of action. Yet, historically and up to the present time, the State's strong *parens patriae* concern for children has been reflected in the statutory tolling of periods of limitation during infancy for most if not all causes of action (CPLR 208; former Civ Prac Act §§ 43, 60). Indeed, the existence of such extensions of periods of limitation during infancy for nonpaternity claims of children has been cited as a factor for the *invalidity* of discriminatory legislation imposing greater time restrictions on bringing paternity suits *(Pickett v Brown, supra,* at 15-16). Family Court Act § 517, thus, does very little more to increase the burdens and risks of defending against stale claims of paternity than those experienced in defending generally against late-filed causes of action arising during infancy.

Furthermore, potential handicaps in contesting a stale, fraudulent paternity suit are attenuated by two circumstances not generally present in civil litigation involving remote causes of action. The first of these is the stricter standard of proof, requiring that paternity be established by clear and convincing evidence, to the point of entire satisfaction *(see, Matter of Linda WW v William XX,* 69 AD2d 918; *Matter of Renee "G" v William "H",* 46 AD2d 823, *affd* 39 NY2d 812). In the trial of a stale claim, both adversaries may have difficulty proving their case because of the weakening or loss of evidence from the lapse of time. Under the more stringent standard of proof in paternity cases, such difficulty in proof is more likely to redound in a respondent's favor than a petitioner's. Second, the danger of an incorrect finding of paternity on a fraudulent, stale claim because of the inability of the respondent to procure the necessary evidence to defend has been significantly reduced with the advent of human leucocyte antigen (hereinafter HLA) and related testing. Obviously, the blood and tissue evidence tested survives any lapses of time, and the test is capable of excluding 9 of every 10 false claims of paternity *(Pickett v Brown, supra,* at 17; *Matter of Department of Social Servs. v Thomas J. S., supra,* at 131). The foregoing circumstances lessening the risk of the wrong result when a fraudulent accusation of paternity is brought long

after conception strongly bolster the legislative determination to apply a lengthy period of limitations, and confirm our conclusion that Family Court Act § 517 does not violate due process *(see, Matter of Department of Social Servs. v Thomas J. S., supra)*.

■ Respondent's final point on appeal is that the evidence of paternity does not meet the requisite standard of proof. We disagree. Petitioner testified unequivocally that she and respondent rendezvoused regularly at a local bar after respondent's evening shift at his workplace ended and engaged in sexual relations approximately twice weekly without using contraception from October 1967 to the late summer of 1968, during which she saw no other men. The critical period of conception was in June 1968 and petitioner's last menstrual period was at the beginning of June. Their romantic involvement was corroborated by several witnesses. The HLA test results established a 99.61% plausibility of paternity, making it "extremely likely" that respondent was the father (1 Schatkin, Disputed Paternity Proceedings, 1987 Supp, at 144 [4th ed rev]). Although petitioner was at times hazy in testifying as to details, and respondent claims that their affair ended before the critical period, these presented only credibility issues which Family Court was in the best position to resolve. Consequently, we find no basis upon which to disturb the court's determination of paternity *(see, Matter of Commissioner of Saratoga County Dept. of Social Servs. v David Z., 133 AD2d 882, 883-884)*.

MAHONEY, P. J., CASEY, WEISS and HARVEY, JJ., concur.

Permission to appeal granted, *sua sponte.* Order affirmed, without costs.