■ In the Matter of JOHN ROBERT P., Appellant, v VITO C., Respondent. [804 NYS2d 802]—

In two related proceedings pursuant to Family Court Act articles 5 and 6, to establish paternity and for custody of the subject child, the petitioner appeals from an order of the Family Court, Suffolk County (Freundlich, J.), entered December 13, 2004, which, upon the granting of the respondent's motion to renew his petition for paternity and to vacate its prior order of filiation dated November 22, 2004, naming him as the child's father, after a hearing, vacated the order of filiation, and dismissed his separate petitions for paternity and for custody of the subject child on the basis of the doctrine of equitable estoppel.

Ordered that the order is affirmed, with costs.

In early 2002 the child who is the subject of the instant petitions was conceived. When the child's mother was two months pregnant, she informed the petitioner that he was the father. The petitioner testified at the hearing that he told the child's mother that he would take care of the infant if it was his and asked that a paternity test be performed. He also testified that the mother became upset because he asked for a paternity test and subsequently "disappeared." When the mother was approximately seven months pregnant, she visited the petitioner at his home and again told him that he was the father of the infant. The petitioner again stated that he wanted a paternity test to make sure that the baby was his at which she again became upset and "disappeared."

In November 2002 the mother gave birth to a baby girl. According to the petitioner, the mother came to his home for the third time with a two-month-old infant in her arms. The petitioner noticed that the infant looked like him, and told his father that the infant might be his father's granddaughter. The petitioner and his father asked the mother to return so that they could have a paternity test performed. The mother allegedly consented but did not return and the petitioner never saw her again. About a month later, he heard through the mother's best friend that she had married another man while she was pregnant. The petitioner assumed that the man she had married was the father of the infant.

The respondent testified that he met the mother while she was already pregnant with the subject infant, and they began to date. The respondent married her before the birth of the infant in September 2002. The respondent was named as the baby's father on her birth certificate. By all accounts, the respondent was a loving father and the infant bonded with him, referring to him as "daddy."

Subsequently, the mother became ill, and in June 2004 she

died. Before she died, the infant's mother allegedly told her mother, the infant's maternal grandmother, that if anything happened to her, the infant's maternal grandmother should contact the petitioner and tell him about the infant. The infant's maternal grandmother contacted the petitioner through her daughter's friend and told him that her daughter had passed away and that he was the baby's father. Arrangements were made for a private paternity test, without the knowledge of the respondent, and the test results revealed that the petitioner was the infant's father. The petitioner then commenced these proceedings to establish paternity and for custody of the infant. The Family Court, after a hearing, dismissed the petitions upon the basis of the doctrine of equitable estoppel.

Great deference is accorded to the Family Court which sees and hears the witnesses, and its finding will not be disturbed unless it lacks a sound and substantial basis in the record (see Eschbach v Eschbach, 56 NY2d 167 [1982]; Matter of Fuentes v Fuentes, 5 AD3d 484 [2004]; Matter of Johnson v Johnson, 309 AD2d 750 [2003]). The determinations of the Family Court were supported by the record, and we affirm.

In general, the doctrine of equitable estoppel is "imposed by law in the interest of fairness to prevent the enforcement of rights which would work a fraud or injustice upon the person against whom enforcement is sought and who, in justifiable reliance upon the opposing party's words or conduct, has been misled into acting upon the belief that such enforcement would not be sought" (Nassau Trust Co. v Montrose Concrete Prods. Corp., 56 NY2d 175, 184 [1982]). An estoppel defense may also be invoked where the failure to promptly assert a right has given rise to circumstances rendering it inequitable to permit the exercise of that right (see Matter of Ettore I. v Angela D., 127 AD2d 6, 12 [1987]). In the context of paternity and custody, the doctrine of equitable estoppel should be applied only where its use furthers the best interests of the child who is the subject of the controversy (see Matter of Ruby M.M. v Moses K., 18 AD3d 471 [2005]; Matter of Charles v Charles, 296 AD2d 547 [2002]; Jean Maby H. v Joseph H., 246 AD2d 282 [1998]).

Here, the petitioner admitted having unprotected sexual relations with the infant's mother before she became pregnant, was told on three occasions that he was the baby's father, and saw the infant when she was two months old, at which time he noticed that the infant looked like him. Without making any inquiries, when he learned that the mother had married another man, he assumed that he was not the father and failed to take any action. In the meantime, the respondent, knowing that the

mother was carrying another man's child, went to prenatal appointments with her, married her, was there for the infant's birth, gave the infant his name, raised her as his own, and developed a loving father-daughter relationship with her.

Under the circumstances, the respondent established, prima facie, that it is in the best interests of the infant, who has already lost her mother, to equitably estop the petitioner from challenging the respondent's paternity, asserting his rights as her biological father, and substituting a stranger for the only father she has ever known (*see Matter of Ellis v Griffin*, 308 AD2d 449 [2003]; *Matter of Ettore I. v Angela D., supra*).

The petitioner's contention that he did not previously file a petition for paternity because he did not know that he was the biological father of the infant until he obtained the results of the private paternity test is self-serving and without merit. Additionally, the desirability of knowing one's true father alone is not sufficient to tip the scales in favor of the petitioner (*see Matter of Sharon GG. v Duane HH.*, 95 AD2d 466 [1983], *affd* 63 NY2d 859 [1984]). Accordingly, the Family Court properly determined that it was in the best interests of the child to equitably estop the petitioner from challenging the respondent's paternity.

The petitioner's remaining contentions are without merit. Schmidt, J.P., Adams, Luciano and Covello, JJ., concur. [*See* 6 Misc 3d 1009(A), 2004 NY Slip Op 51758(U).]