[881 NYS2d 113]

In the Matter of H.M., Respondent, v E.T., Appellant.

Second Department, May 26, 2009

### APPEARANCES OF COUNSEL

*Rosenthal & Markowitz, LLP*, Elmsford (*Adrienne J. Orbach* and *Lisa Solomon* of counsel), for appellant.

*Proskauer Rose LLP*, New York City (*Robyn S. Crosson* and *Justin F. Heinrich* of counsel), for respondent.

### OPINION OF THE COURT

COVELLO, J.

In this Family Court proceeding, a child's birth mother seeks to have another female, lacking legal ties to her, and lacking biological and legal ties to the child, adjudicated a parent of the child and required to pay child support. The question presented for our consideration is whether the Family Court has subject matter jurisdiction to entertain such an application. Because the application is not of a type that the Family Court, a court of limited jurisdiction, has been specifically authorized to entertain, we answer in the negative.

On or about October 23, 2006, H.M., an Ontario resident, and the birth mother of a 12-year-old child, filed a support application with a Canadian agency, seeking to have E.T., a Rockland County resident, and H.M.'s former same-sex partner, adjudicated a parent of the child. H.M. also sought an award of child support retroactive to the date of the child's birth.

In support of her application, H.M. alleged that in August 1989, the parties lived in New York, entered into a monogamous relationship, and started cohabitating. H.M. alleged that the

parties then agreed that she would attempt to become impregnated via artificial insemination, and that after a child was born, they would parent that child together. H.M. alleged that pursuant to this agreement, and with E.T.'s assistance and encouragement, she became impregnated by sperm from an anonymous sperm donor. In September 1994, H.M. gave birth to the subject child. H.M. alleged that over the next few months, E.T. acted as a parent to the child by nurturing and caring for him. However, H.M. alleged that in January 1995, E.T. ended the parties' relationship. H.M., who subsequently relocated with the child to Canada, alleged that after the relationship ended, she made numerous requests of E.T. for child support, all of which were refused.

Approximately two months after H.M. filed her support application, the Canadian agency transmitted it to the New York State Interstate Central Registry's Division of Child Support Enforcement. About two months later, the application, deemed a paternity/support petition pursuant to the Uniform Interstate Family Support Act (Family Ct Act art 5-B [hereinafter UIFSA]), was forwarded to the Family Court, Rockland County, for action. The Family Court then issued a summons to E.T., notifying her of the petition, and informing her that the matter would be heard before a support magistrate.

On March 6, 2007, E.T. appeared with counsel before the Support Magistrate. H.M., proceeding pro se, appeared by telephone.

The Support Magistrate indicated that H.M.'s petition had to be determined pursuant to New York law. The Support Magistrate also indicated that under the "unusual" circumstances presented, the application would be treated as a "paternity petitio[n]." At that point, E.T.'s counsel made an oral motion to dismiss the petition, arguing that it would be impossible for the Family Court to determine that E.T., a female, was "the father" of the subject child.

After entertaining argument from H.M., the Support Magistrate advised the parties that the motion would be granted. In support of that determination, the Support Magistrate found that under the present law of this state, there was no basis upon which the Family Court could adjudicate E.T. a parent of the subject child and require her to pay child support. In this regard, the Support Magistrate noted that E.T. was not the birth mother of the child or an adoptive parent of the child, never executed an official acknowledgment of parentage of the child, and was not in a legally recognized same-sex marriage or

civil union with H.M. when she gave birth to the child. Indeed, the Support Magistrate, pointing out that the Family Court is a court of law with limited subject matter jurisdiction, found no provision in Family Court Act article 5, or in any other article of the Family Court Act for that matter, applicable to a controversy between a birth mother and another female concerning the other female's parentage of a child. Finally, the Support Magistrate, deeming all of H.M.'s factual allegations to be true, and observing that equitable considerations might suggest that E.T. be adjudicated a parent of the child and required to pay child support, noted that the Family Court cannot grant equitable relief.

In an order dated March 7, 2007, the Support Magistrate, upon, in effect, granting E.T.'s motion to dismiss, dismissed the petition "due to there being no basis, under existing New York State [l]aw, under which an Order of Filiation could be issued against [E.T.]." Subsequently, H.M. submitted certain written objections to the Support Magistrate's order, to which E.T. submitted a written response.

In an order entered September 11, 2007, the Family Court granted H.M.'s objections to the Support Magistrate's order. In so doing, the Family Court observed that E.T. was neither a biological nor an adoptive parent of the subject child. However, the Family Court cited certain cases where courts "held individuals responsible for the support of a child even though they were not related to the child by biology or adoption." (16 Misc 3d 1136[A], 2007 NY Slip Op 51711[U], *3 [2007].) The Family Court observed that in those cases, the courts applied the doctrine of equitable estoppel which, the Family Court noted, will be applied in order to protect the best interests of a child born out-of-wedlock. Thus, the Family Court concluded that "a paternity proceeding [can] proceed against a same sex partner if circumstances are established justifying the [doctrine's] application." (2007 NY Slip Op 51711[U], *5.) Then, the Family Court, noting that the subject child was born as a result of E.T.'s "promises," concluded that H.M.'s allegations, if true, could support a finding that E.T. "should be estopped [from denying] her role as a person responsible to provide support for [that] child." (Id.) Accordingly, the Family Court directed a hearing to determine whether E.T. "should be equitably

estopped [from denying] her responsibility to provide support to the subject child." (*Id.* at \*6.)\*

E.T. appeals from the order of the Family Court granting H.M.'s objections to the Support Magistrate's order. Although the order of the Family Court is not an order of disposition (*see Matter of Kraft v Porter*, 300 AD2d 660, 661 [2002]) and, hence, not appealable as of right, under the circumstances, we treat the notice of appeal as an application for leave to appeal, and grant leave (*see* Family Ct Act § 1112). Furthermore, because the Support Magistrate properly granted E.T.'s motion to dismiss the petition on the ground that the Family Court lacked subject matter jurisdiction to entertain H.M.'s application (*see* CPLR 3211 [a] [2]; *see also* Family Ct Act § 165 [a]), we reverse the Family Court's order and reinstate the order of the Support Magistrate dismissing the petition.

Subject matter jurisdiction concerns a court's competence to entertain a particular kind of application (*see Matter of Fry v Village of Tarrytown*, 89 NY2d 714, 718 [1997]; *Lacks v Lacks*, 41 NY2d 71, 75 [1976]; *Thrasher v United States Liab. Ins. Co.*, 19 NY2d 159, 166 [1967]). A court's power to entertain a particular kind of application is conferred by constitution or statute alone (*see Matter of Fry v Village of Tarrytown*, 89 NY2d at 718).

The Supreme Court, a court of general jurisdiction in law and equity (*see* NY Const, art VI, § 7), is competent to entertain all applications unless the court's subject matter jurisdiction to entertain a particular application has been specifically proscribed (*see Sohn v Calderon*, 78 NY2d 755, 766 [1991]; *Thrasher v United States Liab. Ins. Co.*, 19 NY2d at 166). In contrast, the Family Court is a court of limited subject matter jurisdiction (*see* NY Const, art VI, § 13; Family Ct Act § 115). Unable to exercise powers beyond those granted to it by the precise language of the Constitution or a statute (*see Matter of Johna M.S. v Russell E.S.*, 10 NY3d 364, 366 [2008]; *Matter of Walker v Walker*, 86 NY2d 624, 629 [1995]; *Matter of Pearson v Pearson*, 69 NY2d 919, 921 [1987]; *Matter of Silver v Silver*, 36 NY2d

---

\* In an order of the Family Court dated March 25, 2008, issued after the hearing, the court concluded that E.T. was estopped from "deny[ing] her responsibility for [the subject child's] support." The court then adjudicated her a "parent" of the subject child "for that purpose."

Subsequently, in an order of the Family Court dated February 9, 2009, E.T.'s monthly child support obligation was set. In addition, H.M. was awarded a particular amount of child support arrears.

324, 326 [1975]), the Family Court is only competent to entertain such applications as the Constitution or a statute specifically enumerates (see Matter of Roy v Roy, 109 AD2d 150, 151 [1985]; Matter of Mouscardy v Mouscardy, 63 AD2d 973, 974-975 [1978]).

In the instant Family Court proceeding, H.M., never married to or in a civil union with E.T., seeks to have E.T., a woman having no biological or legal connection to the subject child, adjudicated a parent of that child and required to pay child support. An objection concerning subject matter jurisdiction having been made, we must examine the language of the Constitution and the Family Court Act to determine whether the Family Court is competent to entertain an application of this nature.

The Family Court received H.M.'s support application pursuant to UIFSA (see Family Ct Act § 580-305). UIFSA authorizes a proceeding for a determination of "parentage" (Family Ct Act § 580-301 [b] [6]; § 580-701), relief that H.M. sought. UIFSA provides that in deciding such a proceeding, the Family Court is required to apply the procedural and substantive law generally applicable to a "similar" proceeding originating in this state, and may only exercise whatever "powers" and provide whatever "remedies" that are "available" in such a proceeding (Family Ct Act § 580-303 [1]; see Family Ct Act § 580-701 [b]).

The only proceeding in this state "similar" to a proceeding for a determination of "parentage" is a proceeding pursuant to Family Court Act article 5. Yet, as the Support Magistrate recognized, Family Court Act article 5, entitled "Paternity Proceedings," only provides a vehicle for resolving controversies concerning a male's fatherhood of a child.

At common law, the father of a child born out-of-wedlock had no duty to support that child (see Feyler v Mortimer, 299 NY 309, 313 [1949]; Commissioner of Pub. Welfare v Koehler, 284 NY 260, 266 [1940]; People ex rel. Lawton v Snell, 216 NY 527, 532 [1916]). Family Court Act article 5, providing for paternity proceedings, represents the most recent legislative effort to mitigate the harsh effects of that rule (cf. Matter of L. Pamela P. v Frank S., 88 AD2d 865 [1982], affd 59 NY2d 1 [1983]; Feyler v Mortimer, 299 NY at 313). Consistent with that goal, the plain language of numerous provisions of Family Court Act article 5 clearly and unambiguously indicates that a proceeding thereunder will only involve a controversy concerning a male's fatherhood of a child.

To illustrate, Family Court Act § 511 provides that the Family Court has "exclusive original jurisdiction" in proceedings to es-

tablish "paternity" (see also NY Const, art VI, § 13 [b] [5]; Domestic Relations Law § 111-b [3]), a term defined as the "state or condition of being a father" (Black's Law Dictionary 1163 [8th ed 2004]). In addition, Family Court Act § 523 provides that in a proceeding pursuant to Family Court Act article 5, the petition must allege that the person named as the respondent, or the petitioner if the petitioner is a person alleging to be "the child's father," is "the father of the child" (see also Family Ct Act § 512 [d]). Furthermore, Family Court Act § 532 (a) authorizes the Family Court, in determining a proceeding pursuant to Family Court Act article 5, to order a genetic marker or DNA test to aid in the determination of whether "the alleged father" is or is not "the father of the child." Finally, Family Court Act § 541 provides that a proceeding pursuant to Family Court Act article 5 will culminate in an order dismissing the petition if the Family Court finds that "the male party" is not "the father" of the child. If, on the other hand, the Family Court finds that "the male party" is indeed "the father" of the child, Family Court Act § 542 (a) requires the Family Court to issue an "order of filiation, declaring paternity."

Our dissenting colleagues, opining that these statutory provisions can reasonably be interpreted to provide that a female can be adjudicated a parent of a child, would construe them in a manner permitting the Family Court to entertain H.M.'s application. According to the dissent, the provisions are susceptible of more than one reasonable interpretation because certain other provisions of the Family Court Act utilize "gender-neutral language" in referring to those who are liable for the support of a child.

However, many of the statutory provisions cited by the dissent are not part of the statutory scheme embodied in Family Court Act article 5. Being outside of that statutory scheme, they should not be viewed in conjunction with the provisions of Family Court Act article 5 (cf. Matter of Ador Realty, LLC v Division of Hous. & Community Renewal, 25 AD3d 128, 134 [2005]; McKinney's Cons Laws of NY, Book 1, Statutes § 97). Indeed, some of the provisions cited by the dissent are part of Family Court Act article 4. Others are part of UIFSA, which, despite authorizing proceedings to determine "parentage" (Family Ct Act § 580-301 [b] [6]; § 580-701), still requires application of the substantive and procedural law generally applicable to proceedings pursuant to Family Court Act article 5 (see Family Ct Act § 580-303 [1]; § 580-701 [b]).

Although the dissent does cite certain provisions of Family Court Act article 5, those provisions are not germane to the issue at hand, that is, who can be adjudicated a parent in a proceeding pursuant to Family Court Act article 5. First, Family Court Act § 513, providing, in relevant part, that "each parent of a child born out of wedlock is chargeable with the support of such child," does not indicate who can be adjudicated a parent, but rather, imposes a legal obligation. Similarly, Family Court Act § 515, providing, in relevant part, that a child shall be supported by a municipality "[i]n case of the neglect or inability of the parents" to do so, does not indicate who can be adjudicated a parent, but rather, imposes a legal obligation. Finally, Family Court Act § 522, providing, in relevant part, that a "person standing in a parental relation" to a child can commence a proceeding pursuant to Family Court Act article 5 "to establish the paternity of the child and to compel support," does not indicate who can be adjudicated a parent, but rather, addresses the issue of who has standing to maintain a proceeding pursuant to Family Court Act article 5.

The dissent also concludes, as the Family Court did, that the availability of the doctrine of equitable estoppel, applicable in a proceeding pursuant to Family Court Act article 5 (see *Matter of Shondel J. v Mark D.*, 7 NY3d 320, 326 [2006]; *Matter of Sharon GG. v Duane HH.*, 95 AD2d 466, 468 [1983], *affd* 63 NY2d 859, 862 [1984]), warrants the denial of E.T.'s motion to dismiss. Pursuant to that doctrine, a party will be precluded from asserting a right if, by word or deed, that party led another party to form the reasonable belief that the right would not be asserted, and loss or prejudice to the other party would result if the right was asserted (see *Matter of Shondel J. v Mark D.*, 7 NY3d at 326).

H.M. has alleged that E.T. led her to believe that she would always act as a parent to the child she gave birth to, and acted as a parent to the subject child for a period of time after his birth. Assuming the truth of these allegations, as a court must do for purposes of deciding E.T.'s motion to dismiss (see *Brown v State of New York*, 89 NY2d 172, 176 [1996]), the dissent concludes, as the Family Court did, that the circumstances might warrant that E.T. be estopped from denying her parentage of the child. The dissent also concludes, as the Family Court also did, that estopping E.T. from denying her parentage of the child might be in the child's best interests. Indeed, the reason for applying the doctrine of equitable estoppel in a proceeding

pursuant to Family Court Act article 5 is to protect the best interests of the child (*see Matter of Shondel J. v Mark D.*, 7 NY3d at 326).

Although the doctrine of equitable estoppel can be applied in a proceeding pursuant to Family Court Act article 5, when the Family Court applies the doctrine, the Family Court is merely precluding a party from "denying a certain fact" (*Matter of McManus v Board of Educ. of Hempstead Union Free School Dist.*, 87 NY2d 183, 186 [1995]) because "[e]quitable considerations" so warrant (*Matter of Behrens v Rimland*, 32 AD3d 929, 931 [2006]). This is not the same thing as the Family Court granting equitable relief, something the Family Court lacks the power to do (*see Matter of Brescia v Fitts*, 56 NY2d 132, 139 [1982]). Hence, when the Family Court applies the doctrine, the Family Court is doing so as a means of granting relief specifically authorized by the Constitution or statute. That is, the Family Court is applying the doctrine as a means of adjudicating a "male" "the father" of a child (Family Ct Act § 542 [a]; *see e.g. Matter of Nathalie N. v Jerome W.*, 29 AD3d 912, 912-913 [2006]; *Matter of Griffin v Marshall*, 294 AD2d 438, 438-439 [2002]), or as a means of declaring that a "male" is "not the father" of a child (Family Ct Act § 541; *see e.g. Matter of Juan A. v Rosemarie N.*, 55 AD3d 827, 827-828 [2008]; *Matter of Antonio H. v Angelic W.*, 51 AD3d 1022, 1023 [2008]; *Matter of Greg S. v Keri C.*, 38 AD3d 905, 905-906 [2007]; *Matter of John Robert P. v Vito C.*, 23 AD3d 659, 661-662 [2005]; *Matter of Maurice T. v Mark P.*, 23 AD3d 567 [2005]; *Matter of Ettore I. v Angela D.*, 127 AD2d 6, 12-16 [1987]; *Matter of Sharon GG. v Duane HH.*, 95 AD2d at 468-469). Here, however, H.M. has demanded certain relief the Family Court is not specifically authorized by the Constitution or statute to grant. Under these circumstances, the Family Court cannot apply the doctrine, and necessarily cannot reach the issues of whether E.T. should be estopped from denying her parentage of the subject child, and whether estopping E.T. from denying her parentage of the child would be in the child's best interests. If the Family Court applied the doctrine as a means of granting relief not specifically authorized by the Constitution or statute, that would be tantamount to the Family Court granting equitable relief.

The dissent also indicates that it has constitutional "doubts" and "concerns" about Family Court Act article 5 and our decision. In this regard, the dissent, without engaging in an equal protection analysis, suggests that rights to equal protection

might be violated. However, this issue is not properly before this Court. Indeed, no constitutional claim was raised before, or considered by, the Support Magistrate or the Family Court (*see Matter of Dowsett v Dowsett*, 172 AD2d 610, 611 [1991]; *see also Matter of Commissioner of Social Servs. v Segarra*, 78 NY2d 220, 222 n 1 [1991]; Family Ct Act § 439 [e]). Furthermore, we note that notification has not been given to the Attorney General (*see* CPLR 1012 [b] [1], [3]; Executive Law § 71 [3]; *cf. Gina P. v Stephen S.*, 33 AD3d 412, 415-416 [2006]; *Matter of Weinberg v Omar E.*, 106 AD2d 448 [1984]).

Finally, the dissent voices a concern that our decision effectively deprives H.M., and others in her position, of a forum for the adjudication of her application. However, our holding that the Family Court lacks subject matter jurisdiction to entertain applications in the nature of H.M.'s application does not leave H.M. bereft of a forum for the adjudication of her application. This is because, under the circumstances, New York Constitution, article VI, § 19 (e) authorizes the Family Court to "transfer to" the Supreme Court—a court competent to entertain H.M.'s application (*see* NY Const, art VI, §§ 7, 13 [d])—"any . . . proceeding . . . over which" the Family Court "has no jurisdiction." We note that *Matter of Strom v Lomtevas* (28 AD3d 779, 779-780 [2006]), a UIFSA case cited by the dissent involving a distinguishable situation where the Family Court had subject matter jurisdiction to entertain a particular application, does not indicate that UIFSA, which authorizes the Family Court in this case to exercise whatever powers it might exercise in a proceeding pursuant to Family Court Act article 5 (*see* Family Ct Act §§ 580-303, 580-701 [b]), prohibits the Family Court from transferring an application the Family Court receives pursuant to UIFSA but lacks subject matter jurisdiction to entertain.

In summary, we are sensitive to our obligation to liberally construe the provisions of Family Court Act article 5 (*cf. Schaschlo v Taishoff*, 2 NY2d 408, 411 [1957]), enacted by the Legislature to protect the welfare of children born out-of-wedlock (*see Matter of L. Pamela P. v Frank S.*, 59 NY2d 1, 5 [1983]). However, since, as discussed above, those provisions contain clear and unambiguous language indicating that a proceeding pursuant to Family Court Act article 5 is only a vehicle for resolving a controversy concerning a male's fatherhood of a child (*see e.g.* Family Ct Act § 542 [a]), there is no occasion for construing those provisions (*see* McKinney's Cons Laws of

NY, Book 1, Statutes § 76; *cf. Matter of Thomas S. v Robin Y.*, 209 AD2d 298, 307 [1994]) and, hence, no basis for interpreting them, in a manner permitting a proceeding pursuant to Family Court Act article 5 to be used as a vehicle for resolving some other type of controversy. If the failure of Family Court Act article 5 to provide a vehicle for resolving the type of controversy involved here is to be redressed, it is a matter to be undertaken by the Legislature—which "created" and "wholly control[s]" paternity proceedings (*Hough v Light*, 275 App Div 299, 300 [1949])—and not the courts (*cf. Langan v St. Vincent's Hosp. of N.Y.*, 25 AD3d 90, 92, 95 [2005]).

Accordingly, leave to appeal from the order is granted, the order entered September 11, 2007 is reversed, on the law, the petitioner's objections are denied, the order dated March 7, 2007 is reinstated, and the orders dated March 25, 2008 and February 9, 2009 are vacated.

BALKIN, J. (dissenting.) As the twenty-first century unfolds, science and technology have unwittingly confronted and assailed the legal barriers comprising the term "family," the resultant issues often reaching the courthouse steps before judicial precedent and legislation have created a clear footpath to be followed. Nontraditional family units have evolved and been recognized as de facto households, sheltering and supporting the children under their care.[1] Regardless of the nature of the family unit, courts have increasingly been thrust into the forefront in order to provide a protective cloak for the best interests of the children, especially when dealing with issues involving their emotional and financial support.

The issue of first impression before us, as similarly enunciated by the majority, is whether the Family Court has subject matter jurisdiction under the Uniform Interstate Family Support Act (Family Ct Act art 5-B, hereinafter UIFSA) to entertain a petition by a biological parent to charge her former same-sex

1. These evolving family units were recognized as early as 1991, when Chief Judge Kaye wrote of the existence of "a wide spectrum of relationships—including those of longtime heterosexual stepparents, 'common-law' and nonheterosexual partners such as involved here, and even participants in scientific reproduction procedures. Estimates that more than 15.5 million children do not live with two biological parents, and that as many as 8 to 10 million children are born into families with a gay or lesbian parent, suggest just how widespread the impact may be" of any opinion in the area of family and domestic relations law (*Matter of Alison D. v Virginia M.*, 77 NY2d 651, 657-658 [1991, Kaye, Ch. J., dissenting]; *see also Matter of Camilla*, 163 Misc 2d 272, 278 [1994]).

partner with the financial responsibility for the support of a child—planned, conceived, and born during the couple's five-year relationship. Once jurisdiction is established, the secondary issue is whether the Family Court can invoke the doctrine of equitable estoppel under these circumstances. Because the majority opinion would preclude the subject child's mother from having access to the Family Court to secure child support from a responsible party, we respectfully dissent.

I

We begin this dissenting opinion with a more detailed recitation of the underlying factual allegations.[2] H.M. and E.T. were involved in a same-sex, committed relationship in the State of New York for five years and five months, from August 1989 to January 1995. E.T. had previously been married and had two children with her former husband. Throughout the parties' relationship, H.M. stayed at home to care for E.T.'s children and maintain the household, while E.T. was acquiring a chiropractic degree.

During the first year of their relationship, the couple made plans to conceive a child and to raise the child together. They discussed the methods of conception available, the options of using artificial insemination by a known versus anonymous sperm donors, and various child-rearing issues, such as whether to raise the child as a sibling of E.T.'s children, how the children would address each parent, and whether all the children would attend the same school.

In consultation with three different fertility clinics, the couple attempted to conceive via artificial insemination by an unknown donor. In December 1993, after 11 failed attempts at conception, E.T. injected H.M. with a sperm specimen, resulting in the conception of the subject child. The couple announced the news of the pregnancy to their families and mutual friends. During the pregnancy, E.T. attended most of H.M.'s prenatal medical appointments.

The child's birth took place in September 1994, in the parties' home with the assistance of a midwife. E.T. was present and actively participated in the birthing process, even cutting

---

**2.** The factual allegations contained in the Family Court petition herein must be deemed true in light of the procedural posture of this matter, which is presented to us via a motion to dismiss (*see Morone v Morone*, 50 NY2d 481, 484 [1980]; *Underpinning & Found. Constructors v Chase Manhattan Bank, N.A.*, 46 NY2d 459, 462 [1979]).

the child's umbilical cord. While H.M. was the only parent listed on the birth certificate, the parties shared all of the expenses associated with the conception and birth of the child, and jointly nurtured and cared for him after his birth.

In January 1995, when the subject child was almost four months old, E.T. ended the relationship and the parties separated. At the time, E.T. presented H.M. with a check in the sum of $1,500, "acknowledging that [H.M.] did not have the financial resources to move out of their home and care for a four (4) month old infant." Indeed, out of financial necessity, H.M. and the child went to live with her parents in Montreal, Quebec, Canada. H.M. cared for the child as a single parent on an annual income hovering around $10,000, while she attended college and eventually obtained a Master's degree in social work.

In the summer of 1997, H.M. and the child went to stay with E.T. in New York, where the parties unsuccessfully attempted a reconciliation. E.T. declined to provide any further child support or accept financial responsibility for the subject child. Although at unspecified times during their separation E.T. presented H.M. and the child with gifts, including clothes, paid trips to New York, and savings bonds earmarked for the child, continuing financial difficulties and the lack of child support payments prompted H.M. to file for bankruptcy in September 2003.

On or about October 23, 2006, H.M. filed a support application in the Province of Ontario, Canada, seeking a declaration of parentage and the establishment of an order of child support against her former same-sex partner, E.T., which was thereafter transferred to the Family Court, Rockland County pursuant to UIFSA. Imputing an income of $150,000 to E.T., based on the Department of Labor statistics for a licensed chiropractor, and using Ontario's child support standards guide, H.M. asserted in her petition that she was entitled to receive the sum of $1,254 per month in child support payments, retroactive to the child's birth, which retroactive payment would total $180,576.

At the hearing on the support petition, E.T. made an oral motion to dismiss the petition, arguing that there is no standing for same-sex partners in New York to establish maternity as a predicate for support. H.M. countered that a person could be deemed a parent not only by virtue of biology, but also by virtue of her intent and having "acted as a parent to that child." While acknowledging the equitable nature of H.M.'s arguments, the Support Magistrate dismissed the petition with prejudice.

H.M. filed written objections, arguing that E.T. should be required to pay child support based on the doctrine of implied

promise/equitable estoppel, since H.M. relied upon E.T.'s promise to support the child when they "agreed to bring the child into the world via artificial insemination," and further, that this reliance "deprived their child of any possibility of support from a biological father." In rebuttal, E.T. argued that the Support Magistrate properly dismissed the petition, declining to apply equitable principles to award support, custody, or visitation of a child from a same-sex relationship, citing *Matter of Behrens v Rimland* (32 AD3d 929, 930 [2006]) and *Matter of Janis C. v Christine T.* (294 AD2d 496 [2002]).

The Family Court, inter alia, granted the objections and scheduled a hearing on the issue of whether E.T. should be equitably estopped from denying her responsibility to provide support for the subject child, reasoning that

> "[t]he Court of Appeals' decision in [*Matter of Shondel J. v Mark D.* (7 NY3d 320 [2006])] mandates that it is not in the best interests of children for couples to enter into relationships and bring children into the world, only to abandon all responsibility for that child . . . To automatically relieve an individual of any duty of furnishing support for a child resulting from the artificial insemination of her same-sex partner, to which insemination the same-sex partner submitted in reliance upon certain promises, could be against the best interests of the child as well as cast a financial burden upon the biological parent which in equity and conscience should be shared." (16 Misc 3d 1136[A], 2007 NY Slip Op 51711[U], *5 [2007].)

E.T. appeals from this order.

## II

In seeking to dismiss the petition, in effect, pursuant to CPLR 3211 (a) (2)[3] for lack of subject matter jurisdiction, E.T. raises a jurisdictional challenge contending that, because she is a female and because the Family Court cannot make a "maternity" determination, the Family Court is without subject matter juris-

---

3. Pursuant to Family Court Act § 165 (a), "where the method of procedure in any proceeding in which the family court has jurisdiction is not prescribed, the provisions of the civil practice law and rules shall apply to the extent that they are appropriate to the proceedings involved" (*see Matter of Baby Boy O.*, 298 AD2d 677, 679 [2002]; *Matter of Anthony M.*, 271 AD2d 709, 710 [2000]).

diction to order her to pay child support. While the majority accepts her arguments in concluding that jurisdiction does not lie, we disagree and would hold that the Family Court possesses subject matter jurisdiction to entertain H.M.'s petition under UIFSA, not for purposes of establishing maternity, but to establish a party responsible for child support.[4]

"The question of subject matter jurisdiction is a question of judicial power: whether the court has the power, conferred by the Constitution or statute, to entertain the case before it" (*Matter of Fry v Village of Tarrytown*, 89 NY2d 714, 718 [1997], citing *Hunt v Hunt*, 72 NY 217, 230 [1878]; *see Wells Fargo Bank Minn., N.A. v Mastropaolo*, 42 AD3d 239, 243 [2007]). The "Family Court is a court of limited jurisdiction that cannot exercise powers beyond those granted to it by statute" (*Matter of Johna M.S. v Russell E.S.*, 10 NY3d 364, 366 [2008]; *see* NY Const, art VI, § 13; Family Ct Act § 115; *Matter of Silver v Silver*, 36 NY2d 324, 326 [1975]). Family Court Act article 5 declares that "each parent of a child born out of wedlock is chargeable with the support of such child" (Family Ct Act § 513), and grants the Family Court jurisdiction to order support in those circumstances, and to determine "paternity" where it is not acknowledged (*see* Family Ct Act §§ 511, 542).[5] This is a mandatory requirement, as Family Court Act § 545 provides that "[i]n a proceeding in which the court has made an order of filiation, the court *shall* direct the parent or parents possessed of sufficient means" to pay support (emphasis added; *see Matter of Steuben County Dept. of Social Servs. v Deats*, 76 NY2d 451, 455 [1990]; *Matter of Department of Social Servs. v Jay W.*, 105 AD2d 19, 29 [1984]).

In order to extend this obligation to nonresident parents, in 1996, the United States Congress mandated that each state enact UIFSA, to ensure uniformity in interstate actions for the establishment, enforcement, and modification of spousal and

---

**4.** Although H.M. delayed for almost 12 years in instituting this parentage proceeding against E.T., Family Court Act § 517, governing timeliness of such proceedings, provides that they may be instituted, "during the pregnancy of the mother or after the birth of the child, but shall not be brought after the child reaches the age of twenty-one years." Since the parties' child was 12 years of age at the time of commencement, the proceeding was timely brought (*see e.g. Matter of Karen Beth B. v Douglas G.*, 216 AD2d 12, 13 [1995]; *Matter of Discenza v Dann OO.*, 148 AD2d 196, 198 [1989]).

**5.** Family Court Act § 542, entitled "[o]rder of filiation," provides: "[i]f the court finds the male party is the father of the child, it shall make an order of filiation, declaring paternity."

child support orders (*see* 42 USC § 666 [f]; *Matter of Spencer v Spencer*, 10 NY3d 60, 65 [2008]). New York adopted UIFSA in 1997, and specifically designated the Family Court as the only UIFSA "tribunal" (*see* Family Ct Act §§ 580-102, 411). This Court recently reiterated that the Family Court, not the Supreme Court, is "the exclusive UIFSA enforcement tribunal" (*Matter of Strom v Lomtevas*, 28 AD3d 779, 780 [2006]; *see* Sobie, Practice Commentaries, McKinney's Cons Laws of NY, Book 29A, Family Ct Act § 580-102, at 295-296). In accordance therewith, the New York State Constitution and UIFSA provide the Family Court with "exclusive original jurisdiction" to consider, in particular, a petition brought by a nonresident for a "determination of parentage," and for the establishment of an order of support with respect to a child born out-of-wedlock (Family Ct Act § 580-301 [b] [6]; § 580-701; *see* NY Const, art VI, § 13 [c]; Family Ct Act § 580-101 [12] [i], [iii]; [20] [iii]; §§ 580-102, 580-301 [b] [1]; § 580-401 [a] [1]; *see also* Family Ct Act §§ 511, 513, 545).

The petition at issue seeks the establishment of a child support order payable by the same-sex partner of a biological mother for a nonresident child born out-of-wedlock, predicated upon a declaration of "parentage" on the basis of equitable estoppel. "[P]arentage" is defined as "[t]he state or condition of being a parent" (Black's Law Dictionary 1145 [8th ed 2004]; Webster's Third New International Dictionary 1641 [2002 ed]), which encompasses more than a biological or legal connection (*see Smith v Organization of Foster Families For Equality & Reform*, 431 US 816, 843 [1977]). H.M. is not seeking a declaration of "maternity" or that E.T. be declared the child's biological mother pursuant to Family Court Act § 542; rather, she is seeking a determination that E.T. is an individual responsible for the support of the child, in other words, that she is a support parent. It is in this sense that H.M. requests that E.T. be declared a parent of the child. Consonant with the constitutional, statutory, and precedential grant to the Family Court of exclusive original jurisdiction to entertain such parentage applications (*see Matter of Strom v Lomtevas*, 28 AD3d at 780; NY Const, art VI, § 13 [b] [5]; Family Ct Act §§ 413, 511, 542, 545), we believe H.M.'s petition is precisely within the class of proceedings that the Family Court is authorized and competent to hear pursuant to UIFSA (*see* Family Ct Act § 580-102). The majority's contrary conclusion goes against our own precedential authority as enunciated in *Matter of Strom v Lomtevas* (28 AD3d at 780).

Nor will the lack of general equity powers jurisdiction prevent the Family Court from entertaining this matter, as "the doctrine of equitable estoppel may and has been applied in statutory proceedings by courts of limited jurisdiction" (*Matter of Baby Boy C.*, 84 NY2d 91, 100 [1994], citing *Matter of Sharon GG. v Duane HH.*, 95 AD2d 466, 468 [1983], *affd* 63 NY2d 859, 862 [1984]; *see Matter of Shawanda R.*, 17 Misc 3d 437, 439 [2007]; *Matter of Carol J. v William J.*, 119 Misc 2d 739, 742 [1983]). Indeed, such proceedings have been entertained in similar situations involving children of either same-sex or opposite-sex couples (*see Matter of Sharon GG. v Duane HH.*, 95 AD2d at 467-468 [Family Court has jurisdiction over proceeding to establish parentage without seeking support]; *Matter of Charles v Charles*, 296 AD2d 547, 549 [2002] [nonbiological partner liable for child support of nonadopted child of opposite-sex mother]; *Matter of Karin T. v Michael T.*, 127 Misc 2d 14 [1985] [preoperational transgender female liable for child support of artificially-inseminated children of same-sex partner]).

Although the majority bases its rationale for its holding that the Family Court is without subject matter jurisdiction to entertain this petition upon the usage of gender-specific words, such as "male," "father," and "paternity" in Family Court Act article 5 (*see* Family Ct Act §§ 514, 516-a, 517, 542, 545), a more comprehensive reading of the statutory provisions of the Family Court Act reflects the usage of more gender-neutral language in establishing support liability. To begin with, Family Court Act § 513 declares the strong and fundamental policy of the State that "*each parent* of a child born out of wedlock is chargeable with the support of such child . . . if possessed of sufficient means or able to earn such means, [and] shall be required to pay child support" (emphasis added; *see Hirsch v Hirsch*, 37 NY2d 312, 315 [1975]; *Matter of Roe v Doe*, 29 NY2d 188, 192-193 [1971]; *see also* Family Ct Act §§ 413, 515). Family Court Act § 522 permits persons other than the child's biological parents, such as a "person standing in a parental relation," to commence a proceeding not only to establish paternity, but "to compel support."

In fact, UIFSA and Family Court Act article 4, which specifically deal with support proceedings, utilize constitutionally-mandated gender-neutral language throughout their provisions referring to "parents" or the "party" as the ones chargeable for child support (*see* Family Ct Act § 413 [1] [a]; § 413-a [1]; §§ 415, 417, 422, 443; *Orr v Orr*, 440 US 268, 282-283 [1979] [unconstitutional to discriminate in support laws on the basis of gender];

Scheinkman, New York Law of Domestic Relations § 16.1, at 635 [11 West's NY Prac Series 2007] ["As revised in 1980, New York law imposes a duty, on a gender-neutral basis, on each parent to support his or her children"]). These statutes also provide for proceedings to "determine parentage" of an "individual," "party," "parent," or "obligee/obligor" of a child (Family Ct Act § 580-101 [12], [13]; §§ 580-201, 580-205 [a] [2]; § 580-301 [b] [6]; §§ 580-302, 580-401 [a] [1]; § 580-506 [a]; §§ 580-602, 580-607). Indeed, UIFSA allows the Family Court to "determine that a respondent is a *parent* of [a subject] child" (Family Ct Act § 580-701 [a] [emphasis added]).

" 'Where the language of a statute is susceptible of two constructions, the courts will adopt that which avoids injustice, hardship, constitutional doubts or other objectionable results' " (*Matter of Jacob*, 86 NY2d 651, 667 [1995], quoting *H. Kauffman & Sons Saddlery Co. v Miller*, 298 NY 38, 44 [1948]). Thus, courts are enjoined to the maximum reasonable extent to read statutes so as to preserve their constitutionality, and avoid unjust discriminatory results (*see* McKinney's Cons Laws of NY, Book 1, Statutes §§ 147, 150 [c]; *Orr v Orr*, 440 US at 279 [statute invalidated for lack of gender neutrality]; *People v Liberta*, 64 NY2d 152, 170-171 [1984], *cert denied* 471 US 1020 [1985]; *Childs v Childs*, 69 AD2d 406, 418-419 [1979]; *Matter of Carter v Carter*, 58 AD2d 438, 444 [1977]). In light of the gender language inconsistencies referred to above, and because in matters of statutory interpretation "a statute or ordinance must be construed as a whole and . . . its various sections must be considered together and with reference to each other" (*People v Mobil Oil Corp.*, 48 NY2d 192, 199 [1979]; *see Friedman v Connecticut Gen. Life Ins. Co.*, 9 NY3d 105, 115 [2007]; *Matter of Notre Dame Leasing v Rosario*, 2 NY3d 459, 464 [2004]; *Levine v Bornstein*, 4 NY2d 241, 244 [1958]), a construction of this statute which would only permit paternity proceedings as against males and prevent children, like the subject child, from getting support, would not only be unjust under the circumstances presented, but raise equal protection constitutional concerns.[6]

In order to insulate statutorily unconstitutional discriminatory terms or phrases such as the ones raised here, appellate

---

6. Indeed, a reading of the Family Court Act as urged by the majority would lead to the incongruous result that a biological mother can seek to establish the paternity of her child through the use of genetic-marker testing of men she believes to be the father (*see* Family Ct Act § 418), but a biological

courts have remedied such infirmities by simply excising the discriminatory factor or language from the Family Court Act and continuing the Act's application (*see Matter of Patricia A.*, 31 NY2d 83, 89 [1972] [declaring that both boys and girls over the age of 16 may be declared person in need of supervision]; *Matter of Carter v Carter*, 58 AD2d at 444 [language making both father and mother chargeable for child support]; *see also Canino v Canino*, 80 AD2d 932, 933 [1981] [designated sections of Domestic Relations Law interpreted "as gender neutral and their constitutionality affirmed"]). Other challenged statutory provisions without gender-neutral language also have been reconciled by "extend[ing] the coverage of the statute to those formerly excluded," rather than setting the statute aside (*People v Liberta*, 64 NY2d at 170 [striking exemption for females who rape men, and marital exemption for husbands who rape wives]; *Childs v Childs*, 69 AD2d at 418-421 [award of counsel fees available to either party on gender-neutral basis]), even without input from the State's Attorney General (*see People v Santorelli*, 80 NY2d 875, 877 [1992] [crime of public exposure cannot penalize only women]). Similarly here, any constitutional concerns would be avoided altogether by jurisdictionally permitting the filing of petitions to declare "parentage," instead of "paternity" (Family Ct Act § 542), as a prerequisite for a child support order.

Further support for this conclusion can be found in the Court of Appeals' determination that the same-sex partner of a child's parent is entitled to legally adopt their child, despite the fact that "[l]iteral application" of the adoption statutes' gender specifications would have prevented the desired adoption (*Matter of Jacob*, 86 NY2d at 662; *see* Domestic Relations Law § 117; *Matter of Carolyn B.*, 6 AD3d 67, 68 [2004]; *see also Braschi v Stahl Assoc. Co.*, 74 NY2d 201, 208 [1989]). Just as the adoption statute never envisioned families comprised of same-sex "adult lifetime partners" (*Matter of Jacob*, 86 NY2d at 668), such nontraditional families may never have been contemplated upon enactment of the gender-specific statute for orders of filiation under Family Court Act § 542.

---

father could not avail himself of the same procedural vehicle to identify the mother of a child abandoned to his care. Accordingly, if, unbeknownst to a biological father, one of his several relationships produces a child, who is later abandoned on his doorstep by an unknown biological mother, that father, according to the majority, would not have the clear right to attempt to establish the maternity of the child through genetic-marker testing in the Family Court.

The majority would be hard-pressed to identify an alternative forum to entertain this petition and resolve the parties' dispute other than the UIFSA-designated Family Court (*see* Family Court Act §§ 511, 545, 580-102). The majority's suggestion that H.M.'s UIFSA proceeding in Family Court can be transferred to and entertained by the Supreme Court pursuant to the New York State Constitution (*see* NY Const, art VI, § 19 [e]) would, at the end of the day, offer little more than a filing forum to H.M. bereft of any mechanism to establish parentage and child support. Even if this type of petition by a nonresident may initially be instituted before the Supreme Court as a court of general unlimited jurisdiction (*see* NY Const, art VI, § 7; *Kagen v Kagen*, 21 NY2d 532, 536 [1968]; *Artache v Goldin*, 133 AD2d 596, 601 [1987]), that court would be required to transfer the matter to the Family Court pursuant to *Matter of Strom v Lomtevas* (28 AD3d at 780), as the UIFSA-designated tribunal and as uniquely equipped to deal with proceedings for parentage and support (*see* Family Ct Act § 580-306; Sobie, Practice Commentaries, McKinney's Cons Laws of NY, Book 29A, Family Ct Act § 580-102, at 295-296).

Therein lies the conundrum created by the majority opinion's determination that subject matter jurisdiction does not lie in the Family Court, leaving H.M. and similarly-situated persons in limbo. As such, we would hold that the Family Court properly entertained the petition, as it is jurisdictionally empowered to grant the relief requested.

## III

The Family Court likewise appropriately denied E.T.'s motion to dismiss the petition, in effect, pursuant to CPLR 3211 (a) (7) for failure to state a cause of action upon which relief could be granted. Once subject matter jurisdiction lies, the issue presented is whether the doctrine of equitable estoppel can be invoked to compel the former same-sex partner of the nonresident child's birth mother to pay child support. In other words, the question presented is whether only "paternity by estoppel," rather than "parentage by estoppel," should be contemplated as a matter of equity.

In *Matter of Shondel J. v Mark D.* (7 NY3d at 326), the Court of Appeals upheld the Family Court's application of the doctrine of equitable estoppel to prevent a man, who had no legal ties to the mother of a child, and proved to have no biological or legal ties to the child herself, from denying paternity and refusing to

pay child support (*id.*). The Court reasoned, in relevant part, as follows:

> "The purpose of equitable estoppel is to preclude a person from asserting a right after having led another to form the reasonable belief that the right would not be asserted, and loss or prejudice to the other would result if the right were asserted. The law imposes the doctrine as a matter of fairness. Its purpose is to prevent someone from enforcing rights that would work injustice on the person against whom enforcement is sought and who, while justifiably relying on the opposing party's actions, has been misled into a detrimental change of position (*see generally Nassau Trust Co. v Montrose Concrete Prods. Corp.*, 56 NY2d 175, 184 [1982]).
>
> "New York courts have long applied the doctrine of estoppel in paternity and support proceedings. Our reason has been and continues to be the best interests of the child (*Jean Maby H. v Joseph H.*, 246 AD2d 282, 285 [2d Dept 1998]; *see generally Matter of L. Pamela P. v Frank S.*, 59 NY2d 1, 5 [1983])." (*Matter of Shondel J. v Mark D.*, 7 NY3d at 326).

"Although it originated in case law, paternity by estoppel is now secured by statute in New York" (*id.*; *see* Family Ct Act § 418 [a]; § 532 [a]). As such, both the Court of Appeals and the New York Legislature have recognized that the doctrine of "paternity by estoppel" lies even in the absence of a biological or adoptive connection to a child, authorizing the entry of an order of filiation and support based on " 'the paramount concern' " of " 'the best interests of the child' " (*Matter of Maurice T. v Mark P.*, 23 AD3d 567, 567 [2005], quoting *Jean Maby H. v Joseph H.*, 246 AD2d at 285; *see Matter of Shondel J. v Mark D.*, 7 NY3d at 326; *Matter of Jose F.R. v Reina C.A.*, 46 AD3d 564 [2007]; *Matter of Vernon J. v Sandra M.*, 36 AD3d 912, 913 [2007]).

More often than not, paternity by estoppel has been used to judicially declare parentage or prevent a putative father from denying paternity in order to avoid a relationship with the child and/or a support obligation (*see Matter of Antonio H. v Angelic W.*, 51 AD3d 1022 [2008]; *Matter of Greg S. v Keri C.*, 38 AD3d 905 [2007]; *Matter of Nathalie N. v Jerome W.*, 29 AD3d 912, 913 [2006]; *Matter of Charles v Charles*, 296 AD2d at 549; *Matter of Griffin v Marshall*, 294 AD2d 438, 438-439 [2002]; *Ocasio*

*v Ocasio*, 276 AD2d 680, 680-681 [2000]). As far back as 1970, this Court specifically held that a person who neither fathered nor adopted a child could be prevented from denying paternity with respect to that child, not on the basis of an established relationship with the child, but "upon the dual foundation of an implied contract to support the child and equitable estoppel" (*Wener v Wener*, 35 AD2d 50, 53 [1970], citing with approval *Gursky v Gursky*, 39 Misc 2d 1083, 1088 [1963] [husband's endorsement of wife's artificial insemination implied a promise to furnish child support]). More recently, the Appellate Division, Third Department, in addressing a case involving artificial insemination, cogently articulated that "equity and reason require a finding that an individual who participated in and consented to a procedure intentionally designed to bring a child into the world can be deemed the legal parent of the resulting child" (*Laura WW. v Peter WW.*, 51 AD3d 211, 215 [2008]; *see Matter of Karin T. v Michael T.*, 127 Misc 2d at 16-17 [same]).

Although the majority holds that the Family Court is without subject matter jurisdiction to entertain H.M.'s petition, the majority acknowledges that our courts have long been willing to go beyond statutory restrictions to apply the doctrine of equitable estoppel in child support proceedings where necessary for the best interests of the child. The majority nevertheless declares that, when the Family Court applies the doctrine of equitable estoppel, it does so solely "as a means of adjudicating a 'male' [to be] 'the father' of a child . . . or as a means of declaring that a 'male' is 'not the father' of a child."

If a person of the opposite sex, relative to that of the birth parent, can be deemed a parent by estoppel in the child's best interests, even where a biological connection to the child is absent, there is no justification in equity or in reason for holding that, under identical circumstances, a person of the same sex, relative to that of the birth parent, cannot also be deemed a parent by estoppel for the purpose of providing support for the child.[7] Indeed, sister states have so held in the context of parentage and child support proceedings brought within their

7. Because the instant proceeding only seeks child support pursuant to Family Court Act articles 4, 5 and 5-B, any reliance on cases declining to apply the doctrine of parentage by estoppel in the context of custody and visitation proceedings by nonbiological same-sex partners against biological parents under article 6 (*see Matter of Alison D. v Virginia M.*, 77 NY2d 651 [1991]; *Debra H. v Janice R.*, 61 AD3d 460 [2009]; *Matter of Behrens v Rimland*, 32 AD3d at 930; *Matter of Janis C. v Christine T.*, 294 AD2d at 496) should not be followed. In fact, neither party is contemplating, much less seeking, an or-

jurisdictions (*see Miller-Jenkins v Miller-Jenkins*, 180 Vt 441, 465-466, 912 A2d 951, 969-971 [2006] [same-sex partner held to be parent liable for child support], *cert denied* 550 US 918 [2007]; *Elisa B. v Superior Ct.*, 37 Cal 4th 108, 124, 117 P3d 660, 670 [2005] ["As we noted in the context of a husband who consented to the artificial insemination of his wife using an anonymous sperm donor, but later denied responsibility for the resulting child: One who consents to the production of a child cannot create a temporary relation to be assumed and disclaimed at will, but the arrangement must be of such character as to impose an obligation of supporting those for whose existence he is directly responsible" (internal quotation marks omitted)]; *Chambers v Chambers*, 2002 WL 1940145, 2002 Del Fam Ct LEXIS 39 [2002]; *L.S.K. v H.A.N.*, 813 A2d 872, 2002 Pa Super 390 [2002]; *Rubano v DiCenzo*, 759 A2d 959 [RI 2000]).

In light of *Matter of Shondel J. v Mark D.*, the majority's holding raises the question of whether a different result would have been reached on these facts if both parties to this litigation were male. Assume, arguendo, that the parties here were both male, and one, with promises of emotional and financial support, encouraged the other to provide sperm to a surrogate to produce a child that both would parent. It seems to us that the majority's analysis of the relevant statutes and the doctrine of equitable estoppel, with its focus on male fatherhood rather than parentage, would require a finding that the Family Court does have jurisdiction to compel support from the individual who was not the biological father. If that is so, the majority's holding here, stripped to its essentials, precludes a finding that jurisdiction lies in the Family Court based solely on the fact that E.T., the person from whom child support is sought, is a woman and not a man. We believe that such a holding cannot survive modern constitutional scrutiny (*see J. E. B. v Alabama ex rel. T. B.*, 511 US 127, 136 [1994]; *People v Liberta*, 64 NY2d at 168).

As the Court of Appeals has further observed, "[i]n allowing a court to declare paternity irrespective of biological fatherhood,

---

der of custody or visitation in the instant matter. Custody and visitation proceedings by biological strangers to a child ostensibly involve intrusion upon the biological parent's control (*see Matter of Ronald FF. v Cindy GG.*, 70 NY2d 141, 144 [1987]), which courts have only permitted by finding extraordinary circumstances (*see Matter of Bennett v Jeffreys*, 40 NY2d 543, 546 [1976]; *Matter of Behrens v Rimland*, 32 AD3d at 931; *cf. Beth R. v Donna M.*, 19 Misc 3d 724, 734 [2008]), whereas determinations of support do not directly involve such concerns.

the Legislature made a deliberate policy choice" (*Matter of Shondel J. v Mark D.*, 7 NY3d at 330). This choice recognizes the gravity of "[t]he potential damage to a child's psyche caused by suddenly ending established parental support," whether it be emotional or financial (*id.*), especially so when, as here, the child was planned, conceived, and born during the couple's relationship. By parity of reasoning, we perceive no reason why this "potential damage" to the best interests of the child would be any less if the child were deprived of child support from a same-sex partner of the biological parent, as opposed to an opposite-sex partner of the biological parent.

" '[I]n their interpretation and application of filiation statutes, the courts should not lose sight of the main purpose of the proceeding which is to secure the health, welfare and happiness of the child born out of wedlock' " (*Matter of Ettore I. v Angela D.*, 127 AD2d 6, 14 [1987], quoting 1 Schatkin, Disputed Paternity Proceedings § 1.09, at 1-48-1-49 [4th rev ed]; *see Matter of L. Pamela P. v Frank S.*, 59 NY2d at 5; *Matter of Carolyn B.*, 6 AD3d at 68). Given that parents, in the context of both child support legislation and caselaw, have included biological as well as nonbiological parties, it is clear that Family Court Act § 542 was never envisioned as a gender sword, barring otherwise responsible parties from being charged with support obligations. As our Court of Appeals has noted, " '[t]he law is not so insensitive as to countenance the breach of an obligation in so vital and deep a relation, undertaken, partially fulfilled, and suddenly sundered' " (*Matter of Shondel J. v Mark D.*, 7 NY3d at 327 n 3, quoting *Clevenger v Clevenger*, 189 Cal App 2d 658, 674, 11 Cal Rptr 707, 716 [1961]). And, in our view, that principle, if it is to be constitutionally applied, must be fully operative whether the person seeking to avoid responsibility to a child is male or female. After all, "[e]quitable estoppel is gender neutral" (*Matter of Shondel J. v Mark D.* 7 NY3d at 327). Accordingly, we decline to adopt an unduly literal construction of the statute, as such a rigid interpretation would impede the accomplishment of the statute's primary purpose: "that adequate provision will be made for the child's needs" (*Matter of L. Pamela P. v Frank S.*, 59 NY2d at 5).

Regardless of how a child enters this world, "a child is born in need of support" (*In re Parentage of M.J.*, 203 Ill 2d 526, 541, 787 NE2d 144, 152 [2003]). As a matter of public policy, a determination should be made as to whether E.T. is responsible for the support of the child, given that H.M. has already declared

bankruptcy, and E.T.'s support obligation could otherwise fall to the public fisc (*see* Family Ct Act §§ 515, 522). We would, therefore, affirm the order appealed from, which did little more than allow H.M. to attempt to demonstrate, at a hearing, that E.T. should be equitably estopped from asserting a right not to support the child whose conception and birth she so strongly encouraged.

## IV

In accordance with the foregoing, we conclude that the Family Court has jurisdiction to entertain H.M.'s petition, and that sufficient allegations have been raised to survive a motion to dismiss, in effect, pursuant to CPLR 3211 (a) (2) and (7), and to entitle H.M. to a hearing in Family Court on the issue of whether E.T. should be equitably estopped from denying her responsibility to support the subject child (*see Wener v Wener*, 35 AD2d 50 [1970]; *Matter of Karin T. v Michael T.*, 127 Misc 2d at 16-17; *Gursky v Gursky*, 39 Misc 2d at 1088). We would, therefore, affirm the order of the Family Court.

ANGIOLILLO and CHAMBERS, JJ., concur with COVELLO, J.; BALKIN, J., and FISHER, J.P., dissent and vote to affirm the order appealed from in a separate opinion by BALKIN, J.

Ordered that on the Court's own motion, the notice of appeal is treated as an application for leave to appeal, and leave to appeal is granted (*see* Family Ct Act § 1112); and it is further,

Ordered that the order entered September 11, 2007 is reversed, on the law, without costs or disbursements, the petitioner's objections are denied, the order dated March 7, 2007 is reinstated, and the orders dated March 25, 2008 and February 9, 2009 are vacated.