[906 NYS2d 865]

In the Matter of P., Petitioner, v B., Respondent.

Family Court, Orange County, July 28, 2010

**APPEARANCES OF COUNSEL**

*Ronald G. McCormack*, Nyack, for respondent. *Barbara L. Gionta*, New City, for petitioner. *Children's Rights Society, Inc.*, Goshen (*Kristy Horaz* of counsel), for children.

**OPINION OF THE COURT**

DEBRA J. KIEDAISCH, J.

The motion by respondent to dismiss the amended petition in the above-captioned proceeding, and for attorney's fees, is disposed of as follows:

This is a motion brought by the respondent adoptive mother of the two subject children to dismiss for lack of standing an amended paternity petition filed with the Family Court pursuant to article 5 of the Family Court Act by the alleged virtual father of the children seeking to have him adjudicated to be the father of the children (CPLR 3211 [a] [3]). Petitioner is neither the biological nor adoptive parent of the children. Petitioner's amended petition is grounded upon the doctrine of equitable estoppel alleging that "[p]ursuant to equitable estoppel, Petitioner is a male, is a person standing in a parental relation, to wit the father, to the [subject] children."

Petitioner opposes respondent's motion. The attorney for the children joins with petitioner in opposing dismissal of the paternity petition.

The subject children are B., who was born in 2002, and O., who was born in 2005. Neither party is the biological parent of the children. This fact was known to the parties at all relevant times as the children were surrendered to respondent for adoption by the respective birth mother of each child, which birth mothers are not alleged or shown to have had any relationship with either party prior to the adoption proceedings. In each adoption proceeding the children were adopted by respondent, alone, who is the legal mother of the children. Petitioner and respondent were never married to each other. Petitioner alleges he and respondent had an intimate relationship for 11 years until April 2009 at which time respondent asked petitioner to leave the residence they shared with each other and the children. Petitioner alleges that since July 2009 respondent has denied him access to the children. The amended petition, supplemented by an affidavit of petitioner, alleges, among other things: "Throughout the children's lives, the Respondent held the Petitioner out to the world as their father. Respondent should now be stopped from claiming that Petitioner is a stranger and denying the children access to their father."

Petitioner alleges he has devoted himself to both children since their birth and was present for the milestones in their lives and daily activities including their births, the adoptions,

B.'s bris, birthdays, first day of school, attending synagogue, school functions and events, little league, and dance class. When the children were born petitioner alleges he, and his relative(s), were at the hospital. Petitioner states all during the children's lives he would regularly bathe, clothe, and comfort the children, care for them during illnesses, transport them for social events, and has been the primary caregiver for the children on weekends when respondent would be tending to her veterinary practice. Petitioner alleges the children regard him as their father, refer to him as "dad" or "daddy," are emotionally bonded to him as a father, regard his parents and siblings as their paternal grandparents, aunts, and uncles, and will suffer drastic emotional harm if not permitted to continue their relationship with petitioner. Petitioner alleges that all during the children's lives he was held out as their father including to their elementary school principal and teachers. In this regard, petitioner attaches a letter, ostensibly, from B.'s former elementary school principal referring to petitioner as B.'s father and noting petitioner's involvement with B. as a visible parent attending school activities.

The dismissal motion by respondent cites to the case of *Debra H. v Janice R.* (14 NY3d 576 [2010]), which held that the doctrine of equitable estoppel could not be invoked by a virtual parent, who was neither the biological nor adoptive parent, seeking custody and visitation against the wishes of the legal parent of the child even where the legal parent had encouraged or acquiesced in the formation of a parent-child relationship between the child and virtual parent. In reliance upon the case of *Debra H.*, this court recently dismissed a case brought by petitioner in which he sought to assert, pursuant to Domestic Relations Law § 70, parental rights of custody and/or visitation with the subject children on the ground that respondent was equitably estopped from withholding such contact by petitioner with the children by virtue of respondent having permitted petitioner to become a virtual parent (father) to the children. The respondent contends that petitioner knows he is not the biological father of the children and equitable estoppel may not be used by him to have him adjudicated the father of the children in a paternity proceeding.

In *Debra H.*, the Court of Appeals enunciated a "bright-line rule" to prevent single legal parents from becoming trapped in custody/visitation claims and litigation in a domestic breakup by a significant other whom the legal parent allowed to become

or, in fact, encouraged to become a "virtual parent" to the child. The Court of Appeals in upholding its decision in *Matter of Alison D. v Virginia M.* (77 NY2d 651 [1991]), which held that only a child's biological or adoptive parent has standing to seek visitation against the wishes of a fit custodial parent, held that the core constitutional right of the legal parent trumped the equitable estoppel claims of the virtual parent to seek visitation or custody against the wishes of the legal parent. The Court of Appeals stated that "*Alison D.*, coupled with the right of second-parent adoption secured by [*Matter of Jacob* (86 NY2d 651 [1995])], furnishes the biological and adoptive parents of children—and, importantly, those children themselves—with a simple and understandable rule by which to guide their relationships and order their lives" (14 NY3d at 597). In the course of its opinion in *Debra H.*, the Court of Appeals discussed equitable estoppel in paternity cases but did so in what appeared to signal a particularized application of equitable estoppel to preclude an individual, who has held himself out as the father of a child and permitted an operative parent-child relationship to develop upon which the child has relied and become dependent, from disavowing financial support obligations for the child. The Court of Appeals stated:

> "Our holding in [*Matter of Shondel J. v Mark D.* (7 NY3d 320 [2006] [in which genetic testing proved the male held out as the father was not the biological father])] was limited to the context in which that case arose—the procedure for determining the paternity of an 'alleged father.' Moreover, we see no inconsistency in applying equitable estoppel to determine filiation for purposes of support, but not to create standing when visitation and custody are sought . . . This may on occasion result in deeming a biological relationship to exist where the putative father is, in fact, a biological stranger to the child, as turned out to be the case in *Shondel J.*" (*Id.* at 593.)

*Debra H.* further held that even where the legal parent had encouraged another adult to become a virtual parent of the child, the fundamental core constitutional right of the legal parent to make decisions concerning the care, custody, control, and rearing of that child, entitled the legal parent to refuse to allow a second-parent adoption (*see Matter of Jacob*, 86 NY2d 651 [1995]).

In a concurring opinion in *Debra H.*, two Judges of the Court of Appeals wrote:

"*Alison D.* created a bright-line rule that made it possible for biological and adoptive parents to clearly understand in what circumstances a third party could obtain status as a parent and have standing to seek visitation or custody with a child. . . .

"Thus, the law in New York is clear: a person who lacks a biological relationship to a child and desires to become a legal parent must undertake a second-parent adoption. . . .

"[O]ur decision in *Matter of Shondel J. v Mark D.* . . . applying equitable principles in the context of a paternity dispute was fully consistent with *Alison D.* . . . [T]he biological mother in that case . . . did not object to a finding that Mark D. was the father of the child. . . . Thus, the constitutional right of a fit parent to determine with whom her child associates was not implicated in *Shondel J.*, nor were equitable principles relied on in that case to declare a person lacking biological or adoptive ties to a child to be a parent over the objection of the child's fit biological mother" (14 NY3d at 602-603 [Graffeo and Jones, JJ., concurring]).

However, on the same day *Debra H.* was decided, May 4, 2010, the Court of Appeals decided another case, *Matter of Juanita A. v Kenneth Mark N.* (15 NY3d 1 [2010]), which was published some period later after *Debra H.* In *Juanita A.* the Court of Appeals approved the invoking of the doctrine of equitable estoppel against the wishes of the biological mother as a defense to the mother's paternity petition seeking to adjudicate another person as the biological father and disenfranchise the virtual father whom, it is alleged, the mother held out to the subject child as her father and acquiesced in the development of a close relationship between the child and such father figure.[1] In *Debra H.*, the Court of Appeals did not cite to its discussion of equitable estoppel in *Juanita A.*, but cited only to its discussion of equitable estoppel in *Shondel J.*

The issue before this court in this proceeding is whether, by invoking the doctrine of equitable estoppel, a known nonbiological, nonadoptive male may directly affirmatively bring a paternity petition against the legal parent mother of the subject children to have an order of filiation entered declaring him the

---

1. Genetic testing had incorrectly been permitted during the paternity proceeding filed by the mother which proved the male who had been held out as the father was not the biological father.

father of the children which will impart legal standing to him as a parent to seek custody and/or visitation with the children against the wishes of the mother (Family Ct Act § 542 [a]).

This court finds this case falls under the holding of the Court of Appeals in *Debra H.* and its bright-line rule concerning the rights of legal parents as against virtual parents concerning the rearing of the children involved. To permit petitioner, a known biological stranger to the children, under the claim of being a virtual parent, to merely alter the form of the proceeding from a custody to a paternity proceeding in order to gain standing to seek custody and/or visitation against the wishes of the legal parent undermines the bright-line rule and assurance of certainty the Court of Appeals endorsed in *Debra H.* Any person who had an intimate or domestic or personal relationship with a single legal parent of the kind described in *Debra H.* and claimed to be a virtual parent to the legal parent's child with the encouragement or acquiescence of the legal parent, although not able to sue for custody or visitation upon a theory of equitable estoppel, would merely have to recast the same allegations in a petition for paternity. Rather than it occurring only "on occasion," as observed in *Debra H.*, that a nonbiological parent might be adjudicated the father of the child resulting from invoking the doctrine of equitable estoppel, an open-ended number of persons having no biological relation to the child could bring such claims seeking to prove they are a virtual parent entitled to be adjudicated the legal father.[2]

The court has considered petitioner's allegations setting forth why he did not join in each of the respective adoptions of B. and then O. With respect to B.'s adoption, petitioner in his affidavit submitted with the petition states:

2. It is noted that in *Shondel J.* and *Juanita A.*, there were also some legal indicia of fatherhood with respect to the males as to whom equitable estoppel was invoked to prevent disclaiming or disproving their biological fatherhood. In *Shondel J. v Mark D.*, the mother had named Mark D. as the father in a birth registration document in Guyana where the child was born. Mark D. later signed a Guyana registry stating he was the father and authorizing the change of the child's last name to his. In *Juanita A.*, the person the mother later sought to disprove as the biological father, Raymond S., was listed on the child's birth certificate as the father. Petitioner in this proceeding does not allude to any such legal indicia of his alleged fatherhood in his pleadings. He would not be listed as a parent on the children's birth certificates issued through the adoption process, as he was not an adoptive parent. The letters from the school principal and other persons that they always regarded and treated petitioner as the children's father is evidence of petitioner being a virtual parent not legal indicia.

"Not understanding the ramifications, I participated in the adoption process of B., but was not listed as an adoptive parent on the petition for adoption, believing that my participation in the process was sufficient to make my fatherhood legal. The Respondent told me that the adoption would be simpler if she adopted B. in her name only, and that thereafter, I could easily modify the papers to include me. I naively believed the Respondent's representation and did not demand to be included in the adoption process. I believed that my paternal rights would be preserved by my participation in the adoption process and the children's lives thereafter."

With respect to O. there really are no allegations by petitioner concerning any representations by respondent as to a future second-parent adoption. When O. was adopted, again solely by the respondent, petitioner stated he felt his relationship with respondent was in decline. Petitioner alleges only that respondent assured petitioner their relationship "was as strong as ever."

In *Debra H.* the Court of Appeals stated that even a legal parent who had encouraged a virtual parent relationship could refuse a second-parent adoption. Thus, whether petitioner is alleging that by implication arising from the virtual parent relationship which respondent allegedly permitted to develop, or alleged representations by respondent, that petitioner could adopt the children later, the respondent, as the legal parent of the children has the right to refuse such second-parent adoption even if that means changing her mind. The bright-line rule enunciated in *Debra H.* is that a person is either the biological or adoptive parent of the child which confers status as a legal parent with the right to choose with whom the child associates. The adoption process in which petitioner alleges he participated is essentially that he befriended and transported the birth mothers, was a subject of the home study ordered by the adoption court, and gave overall general support to respondent and was present during the phases of the adoption process. Petitioner would have been included in the home study due to his intimate relationship with respondent, the adoptive mother. Such conduct as petitioner describes does not render petitioner an adoptive parent or create an estoppel. There is a large difference between filing an adoption petition seeking to take on the legal status and responsibility of a parent as opposed to being a supportive friend or intimate. Legal parental status is conferred by

filing a petition for adoption and such petition being granted by order of the court. Not petitioning to adopt either child on two separate occasions several years apart was a conscious decision. Petitioner's allegations as a matter of law fall outside the bright-line rule.

The Appellate Division, Second Department, in reviewing the paternity proceeding statute set forth in article 5 of the Family Court Act, held, in effect, that the statute as enacted by the Legislature is to establish or disestablish a male's biological fatherhood of a child (*Matter of H.M. v E.T.*, 65 AD3d 119, 124-125 [2009], *revd on other grounds* 14 NY3d 521 [2010]). To that end, the Family Court before whom a paternity proceeding is brought is vested with the authority to order the mother, child, and alleged father to submit to DNA or genetic marker testing to prove or disprove biological paternity (Family Ct Act § 532 [a]). As the cases note, there are instances in which equitable estoppel has intervened to prevent such testing (Family Ct Act § 532 [a]; *Matter of Shondel J. v Mark D.*, 7 NY3d 320 [2006]). Petitioner, knowing he is not the biological parent of the children, seeks to be adjudicated the father of the children in a paternity proceeding based on his being a virtual parent to the children which the mother allegedly encouraged and, according to petitioner, should be estopped to deny. If petitioner is granted such relief, and the paternity statute is applied in such manner where being a biological parent is no longer the central underpinning to being adjudicated the parent, that would raise the issue of equal protection and fundamental fairness to female virtual parents who have the same claims that in reliance upon the legal parent they became a virtual parent to the child (see discussion in the two-judge dissent in *Matter of H.M. v E.T.*, 65 AD3d 119, 136-137 [2009]). In any event, to permit petitioner to apply the paternity statute in the manner he seeks constitutes a substantial expansion of the paternity statute which this court is not able to conclude the Court of Appeals has yet approved. It appears the Court of Appeals has so far approved of applying the doctrine of equitable estoppel with respect to paternity re-lated issues in particularized instances determined on a case-by-case basis. While the Court of Appeals in *Juanita A.* permitted equitable estoppel to block the mother's paternity petition seeking to establish someone other than the virtual father as the biological father, that case does not encompass the use to which the paternity statute is sought to be applied by petitioner in this case. This court finds petitioner's circumstances as he al-

leges and pleads fall within the holding of the Court of Appeals in *Debra H. v Janice R.* (14 NY3d 576 [2010]), and that he may not use the paternity statute as a means to circumvent *Debra H.* to be adjudicated a legal parent of the children, thereby, gaining standing to seek custody and/or visitation against the wishes of their mother, the legal parent. If there is to be an expansion of the paternity statute which permits its application as petitioner seeks, such determination should be made by the Court of Appeals or the Legislature of the State of New York.

Although the court concludes that petitioner lacks standing to bring this petition, and that the respondent's motion to dismiss the petition should be granted, the court finds this is not an appropriate case for the award of attorney's fees.

Accordingly, it is hereby ordered that the above-captioned proceeding, and the paternity petition filed therein, are hereby dismissed for lack of standing in petitioner to bring such petition; and it is further ordered that the branch of the motion for attorney's fees is denied.